UCS-840(REV 1/2000)

# REQUEST FOR JUDICIAL INTERVENTION

| SUPREME | NEW YORK | 115624/2010 | 12/2/10 |
|---|---|---|---|
| COURT | COUNTY | INDEX NO. | DATE PURCHASED |

PLAINTIFF(S):

In the Matter of the Application of
GLEN P. FARRELL,        Petitioner
for Judgment Pursuant to CPLR 7503(b) Staying the Arbitration
Sought by
DEFENDANT(S):


SUBWAY INTERNATIONAL B.V.,
a Netherlands corporation,

                    Respondent.

| For Clerk Only |
|---|
| IAS entry date |
| Judge Assigned |
| RJI Date |

Date issue joined: _____ Bill of particulars served (Y/N):   [ ]Yes   [X]No

NATURE OF JUDICIAL INTERVENTION (check ONE box only AND enter information)

[ ] Request for preliminary conference

[ ] Note of issue and/or certificate of
    readiness

[ ] Notice of motion (return date:_____)
    Relief sought _____

[ ] Order to show cause
    (clerk enter return date:_____)
    Relief sought_____
[ ] Other ex parte application (specify:

_____)

[X] Notice of petition (return date: 12/16/10)
    Relief sought  STAY OF ARBITRATION

[ ] Notice of medical or dental malpractice
    action (specify:_____)

[ ] Statement of net worth

[ ] Writ of habeas corpus

[ ] ther (specify: _____

_____)

NATURE OF ACTION OR PROCEEDING (Check ONE box only)

**MATRIMONIAL**
| | |
|---|---|
| [ ] Contested | -CM |
| [ ] Uncontested | -UM |

**COMMERCIAL**
| | |
|---|---|
| [ ] Contract | -CONT |
| [ ] Corporate | -CORP |
| [ ] Insurance (where insurer is a party, except arbitration) | -INS |
| [ ] UCC (including sales, negotiable instruments) | -UCC |
| [ ] *Other Commercial | -OC |

**REAL PROPERTY**
| | |
|---|---|
| [ ] Tax Certiorari | -TAX |
| [ ] Foreclosure | -FOR |
| [ ] Condemnation | -COND |
| [ ] Landlord/Tenant | -LT |
| [ ] *Other Real Property | -ORP |

**OTHER MATTERS**
| | |
|---|---|
| [ ] *_____ | -OTH |

**TORTS**

Malpractice
| | |
|---|---|
| [ ] Medical/Podiatric | -MM |
| [ ] Dental | -DM |
| [ ] *Other Professional | -OPM |

| | |
|---|---|
| [ ] Motor Vehicle | -MV |
| [ ] *Products Liability | -PL |

| | |
|---|---|
| [ ] Environmental | -EN |
| [ ] Asbestos | -ASB |
| [ ] Breast Implant | -BI |
| [ ] *Other Negligence | -OTN |
| [ ] *Other Tort (including intentional) | -OT |

**SPECIAL PROCEEDINGS**
| | |
|---|---|
| [X] Art. 75 (Arbitration) | -ART75 |
| [ ] Art. 77 (Trusts) | -ART77 |
| [ ] Art. 78 | -ART78 |
| [ ] Election Law | -ELEC |
| [ ] Guardianship (MHL Art. 81) | -GUARD81 |
| [ ] *Other Mental Hygiene | -MHYG |
| [ ] *Other Special Proceeding | -OSP |

Check "YES" or "NO" for each of the following questions:

Is this action/proceeding against a

YES  NO                                          YES  NO
[ ]  ☒ Municipality:                             [ ]  ☒ Public Authority:
        (Specify_____)                       (Specify_____)

YES  NO
☒  [ ] Does this action/proceeding seek equitable relief?
[ ]  ☒ Does this action/proceeding seek recovery for personal injury?
[ ]  ☒ Does this action/proceeding seek recovery for property damage?

Pre-Note Time Frames:
(This applies to all cases except contested matrimonials and tax certiorari cases)

Estimated time period for case to be ready for trial (from filing of RJI to filing of Note of Issue):

☒ Expedited: 0-8 months     ☐ Standard: 9-12 months     ☐ Complex: 13-15 months

Contested Matrimonial Cases Only: (Check and give date)

Has summons been served?          ☐ No     ☐ Yes, Date_____

Was a Notice of No Necessity filed? ☐ No    ☐ Yes, Date_____

ATTORNEY(S) FOR PLAINTIFF(S):

| Self Rep.* | Name | Address | Phone # |
|---|---|---|---|
| ☐ | PRYOR CASHMAN LLP | 7 Times Square | |
| ☐ | | New York, NY 10036 | (212)421-4100 |

ATTORNEY(S) FOR DEFENDANT(S):

| Self Rep.* | Name | Address | Phone # |
|---|---|---|---|
| ☐ | | | |
| ☐ | | | |

*Self Represented: parties representing themselves, without an attorney, should check the "Self Rep." box and enter their name, address, and phone # in the space provided above for attorneys.

INSURANCE CARRIERS:

RELATED CASES: (IF NONE, write "NONE" below)

| Title | Index # | Court | Nature of Relationship |
|---|---|---|---|

NONE

   I AFFIRM UNDER PENALTY OF PERJURY THAT, TO MY KNOWLEDGE, OTHER THAN AS NOTED ABOVE, THERE ARE AND HAVE BEEN NO RELATED ACTIONS OR PROCEEDINGS, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION PREVIOUSLY BEEN FILED IN THIS ACTION OR PROCEEDING.

Dated:

12/1/10

_____
(SIGNATURE)

BENJAMIN K. SEMEL
(PRINT OR TYPE NAME)

PETITIONER GLEN P. FARRELL
ATTORNEY FOR

ATTACH RIDER SHEET IF NECESSARY TO PROVIDE REQUIRED INFORMATION

\forms\rji2000.wpd

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

*In the Matter of the Application of*

GLEN P. FARRELL,

                          Petitioner

*for Judgment Pursuant to CPLR 7503(b)*
*Staying the Arbitration Sought by*

SUBWAY INTERNATIONAL B.V.,
a Netherlands corporation,

                          Respondent.

Index No.: 115634 /2010

---

## PETITIONER'S MEMORANDUM OF LAW
## IN SUPPORT OF THE VERIFIED PETITION TO STAY ARBITRATION

PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
(212) 421-4100

*Attorneys for Petitioner*

*Of Counsel:*
    Gideon Cashman
    Benjamin K. Semel

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

STATEMENT OF FACTS .............................................................................................1

ARGUMENT...................................................................................................................1

I.      Legal Standards On This Motion ....................................................................1

II.     Respondent's Choice Of Arbitration Agency
        Does Not Comply With The Agreement Between The Parties ...........................2

III.    New York As The Required Forum Is Not Valid
        Under The Liechtenstein Law Governing The Contract.....................................4

IV.     The Demand For Arbitration Does Not Comply With
        The Agreement Between The Parties And Is Inadequate On Its Face................7

V.      Respondent Must Pay Petitioner's Attorneys' Fees
        and Expenses Pursuant To The Agreement ......................................................8

CONCLUSION................................................................................................................9

## TABLE OF AUTHORITIES

CASES                                                                 PAGE(s)

64 Fulton St. Dev. v. Marinelli Assocs.,
    240 A.D.2d 226, 658 N.Y.S.2d 611 (1st Dep't 1997)........................................1

Alfadda v. Fenn,
    966 F. Supp. 1317 (S.D.N.Y.1997), aff'd, 159 F.3d 41 (2d Cir. 1998) ...............5

Blamowski v. Munson Transp., Inc.,
    91 N.Y.2d 190, 668 N.Y.S.2d 148 (1997) .......................................................1

Blatt v. Sochet,
    199 A.D.2d 451, 606 N.Y.S.2d 11 (2d Dep't 1993)...........................................3

Board of Coop. Educ. Servs. v. Central Council of Teachers,
    59 A.D.2d 942, 399 N.Y.S.2d 693 (2d Dep't 1977).........................................3

Board of Educ. v. Palmyra-Macedon Faculty Ass'n,
    78 A.D.2d 765, 433 N.Y.S.2d 643 (4th Dep't 1980) .......................................7

Corto v. Lefrak,
    203 A.D.2d 94, 610 N.Y.S.2d 214 (1st Dep't 1994).........................................4

County of Rockland v. Primiano Constr. Co.,
    51 N.Y.2d 1, 431 N.Y.S.2d 478 (1980) ..........................................................1

Diorinou v. Mezitis,
    237 F.3d 133 (2d Cir. 2001)..........................................................................5

Koch v. Consolidated Edison Co.,
    62 N.Y.2d 548, 479 N.Y.S.2d 163 (1984) ......................................................4

Nager Elec. Co. v. Weisman Constr. Corp.,
    29 A.D.2d 939, 289 N.Y.S.2d 473 (1st Dep't 1968).......................................7

Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,
    825 F.2d 709 (2d Cir. 1987)..........................................................................5

STATUTES

CPLR §7503(b)...............................................................................................1, 4

CPLR §7503(c) ..................................................................................................1

STATEMENT OF FACTS

Please see the accompanying Affirmation of Benjamin K. Semel and exhibits thereto ("Semel Aff.") for a description of the relevant facts on this motion.

ARGUMENT

I.    Legal Standards On This Motion

CPLR §7503(b) provides in relevant part that "a party who has not participated in the arbitration...may apply to stay arbitration on the ground that a valid agreement was not made or has not been complied with...." In accordance with CPLR §7503(b), Petitioner has not participated in the arbitration and has not been served with an application to compel arbitration. Therefore, Petitioner is entitled to make this application to stay arbitration.[1]

The procedure to be applied by a court in adjudicating a proceeding to stay arbitration was explained by the Court of Appeals in County of Rockland v. Primiano Constr. Co., 51 N.Y.2d 1, 7-8, 431 N.Y.S.2d 478, 481 (1980) as follows:

> The parties are entitled first to a judicial determination whether there was a valid agreement to arbitrate. If the court determines that the parties had not made an agreement to arbitrate, that concludes the matter and a stay of arbitration will be granted . . . [citations omitted]. Similarly, if the court concludes that, while the parties may have made a valid agreement to arbitrate, the particular agreement that they made was of limited or restricted scope and the particular claim sought to be arbitrated is outside that scope, there will likewise be a stay of arbitration . . . . [citations omitted].
>
> If, however, it is concluded that the parties did make an agreement to arbitrate and that the particular claim sought to be arbitrated comes within the scope of their agreement, there then may be a second threshold question for judicial determination -- has the agreement that they made been complied with?

---

[1] There is no issue with the §7503(c) twenty-day limit, since the Demand for Arbitration contained no language referring to such a time limit. The Court of Appeals has held unequivocally that unless the demand for arbitration contains the precise wording of the §7503(c) notice then the period to seek a stay of arbitration is not limited. Blamowski v. Munson Transp., Inc., 91 N.Y.2d 190, 194-195, 668 N.Y.S.2d 148, 150 (1997). See also 64 Fulton St. Dev. v. Marinelli Assocs., 240 A.D.2d 226, 658 N.Y.S.2d 611 (1st Dep't 1997).

II.     Respondent's Choice Of Arbitration Agency
        Does Not Comply With The Agreement Between The Parties

The Franchise Agreement between the parties (the "Agreement") states that:

[A]rbitration will be held in accordance with the United Nations Commission on
International Trade Regulations and Law (UNCITRAL) Arbitration Rules
administered by an arbitration agency, such as the International Centre for
Dispute Resolution, an affiliate of the American Arbitration Association.
(Semel Aff., Ex. B, §10(c))

Article 6 of the UNCITRAL Rules states:

1.      If a sole arbitrator is to be appointed, either party may **propose** to the
        other:
        a.      The names of one or more persons, one of whom would serve as
                the sole arbitrator; and
        b.      If no appointing authority has been agreed upon by the parties, the
                name or names of one or more institutions or persons, one of
                whom would serve as appointing authority.

2.      If within thirty days after receipt by a party of a proposal made in
        accordance with paragraph 1 the parties have not reached agreement on
        the choice of a sole arbitrator, the sole arbitrator shall be appointed by the
        appointing authority agreed upon by the parties. **If no appointing
        authority has been agreed upon by the parties**, or if the appointing
        authority agreed upon refuses to act or fails to appoint the arbitrator within
        sixty days of the receipt of a party's request therefor, **either party may
        request the Secretary-General of the Permanent Court of Arbitration
        at The Hague to designate an appointing authority**.

(emphasis added)

The rules are plain – a party may not unilaterally choose its own agency to control the

arbitration.  If the parties cannot agree, then the Permanent Court of Arbitration at The Hague

will decide.  There is no allowance in the rules for Respondent to pick its own arbitration agency

and force Petitioner to be judged by it.

It doesn't matter what agency – there must be agreement.  However, it is all the more

egregious in a case such as this, where Respondent has chosen ADRC, an outrageously biased

agency which in turn appointed as sole arbitrator a man who shares almost the precise job as

Respondent's counsel – a Connecticut lawyer who is counsel for a Connecticut-based retail food chain. See Semel Aff., ¶¶18-22, Exs. G, H. The incredulity becomes strained upon learning that ADRC hid a history of disciplinary action for ethical violations against this sole arbitrator. Id. at Ex. I. The governing rules and thus the law do not allow such an objectionable proceeding.

Courts have permanently stayed arbitration where a party designates an agency for arbitration different from the one that was agreed to by the parties. See Blatt v. Sochet, 199 A.D.2d 451, 452, 606 N.Y.S.2d 11, 13 (2d Dep't 1993) (granting a stay of arbitration because the defendant's service of a summons upon the plaintiff designating rabbinical arbitration was inappropriate where the parties' agreement stated that "[a]ny controversy arising under this agreement shall be settled by arbitration under the rules then obtaining of the American Arbitration Association"). See generally Board of Coop. Educ. Servs. v. Central Council of Teachers, 59 A.D.2d 942, 942, 399 N.Y.S.2d 693, 694 (2d Dep't 1977) (affirming a stay of arbitration where the contract between the parties set forth a procedure whereby the superintendent of the school would settle the dispute, "not an arbitrator of the American Arbitration Association.").

In this case what was agreed to by the parties is crystal clear:  a mutually-chosen arbitration agency, and barring agreement an agency chosen by the Secretary-General of the Permanent Court of Arbitration at The Hague. The UNCITRAL rules moreover stress the importance of neutrality in international cases such as this, going so far as to advise the use of an arbitrator from a neutral country.  ADRC thumbs its nose at such ideas of neutrality, and bears no resemblance to the impartial arbitration agency contemplated by the Agreement.

Petitioner has never agreed upon ADRC or any other appointing authority for any arbitration with Respondent, and Respondent has not petitioned the Secretary-General of the

Permanent Court of Arbitration at The Hague to designate an authority. Nor is it conceivable that the Secretary-General would appoint such a provincial agency for an international dispute. The law is plain that the choice of ADRC does not comply with the agreement between the parties, and thus a permanent stay of Respondent's arbitration proceeding with ADRC should be granted under CPLR §7503(b).

III.   New York As The Required Forum Is Not Valid
       Under The Liechtenstein Law Governing The Contract

The Franchise Agreement states that it "will be governed by and construed in accordance with the substantive laws of Liechtenstein, without reference to its conflicts of law." The laws of Liechtenstein are written in German, the official language of Liechtenstein.

However, this language barrier should prove no obstacle in this case because Respondent has already litigated and lost this precise issue before German appellate courts, who were interpreting a law written in their native tongue. See Semel Aff, ¶¶26-32, Ex. K. The German court decisions should govern this case for two reasons. First, they are persuasive authority. The courts detail the precise provision that is violated and the facts which violate it, which also obtain in this case as well. Second, Subway should be barred from relitigating this issue under the principles of collateral estoppel.

Collateral estoppel or issue preclusion is available to protect parties who were not a part to the earlier proceedings from having to litigate those issues previously raised and rejected. The requirements for applying collateral estoppel are that the issue for which preclusion is sought must be the same as the issue that was litigated in the prior proceeding, and that the party seeking to be precluded had a full and fair opportunity to litigate in the prior proceedings. Corto v. Lefrak, 203 A.D.2d 94, 610 N.Y.S.2d 214 (1st Dep't 1994) (citing Koch v. Consolidated Edison Co., 62 N.Y.2d 548, 479 N.Y.S.2d 163 (1984)). Both of these conditions are met here.

4

Issue preclusion is also proper with regard to foreign judgments. "American courts will normally accord considerable deference to foreign adjudications as a matter of comity." Diorinou v. Mezitis, 237 F.3d 133, 142 (2d Cir. 2001). Domestic courts may adopt a foreign tribunal's previous resolution of a particular legal or factual issue, thus precluding a party to a foreign litigation from rearguing a matter previously resolved in the foreign forum. See, e.g., Alfadda v. Fenn, 966 F.Supp. 1317, 1330-32 (S.D.N.Y.1997), aff'd, 159 F.3d 41 (2d Cir. 1998) (precluding plaintiffs from relitigating issues previously resolved by a French court). Courts have also noted that they will "generally extend comity whenever the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy." Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B., 825 F.2d 709, 713 (2d Cir. 1987). Respondent is not a United States citizen, and recognition of German appellate court ruling on a body of law that is written in the German language is only reasonable and cannot violate public policy.

In this case, the German decisions are directly on point, and Respondent was plaintiff and thus fully participated in the proceedings. The decisions held that:

> Respondent has proved that the [Subway franchise arbitration forum] agreement is invalid according to the law to which the parties have subjected it. Section 1061 of the Code of Civil Procedure provides that the recognition and enforcement of arbitral awards is governed by Article V of the New York UN-Convention on the Recognition and Enforcement of Foreign Arbitral Awards dated July 10, 1958.

> The parties subjected their contract to Liechtenstein law in clause 13 of the contract. It can remain open whether an agreement selecting Liechtenstein law could be validly made in standard terms and conditions, because in any case the Claimant is bound by its own standard terms and conditions.

> The Austrian Civil Code applies in Liechtenstein. Section 879(3) of the Civil Code provides: "A contractual provision, which is included in standard terms and conditions or in standard contracts and does not stipulate one of the material duties which the parties are mutually obligated to perform, is always null and void

5

if such provision grossly disadvantages one party under the circumstances of the case."

This provision applies to the contract at issue here, even if by concluding the contract, the Respondent became a commercial enterprise and was no longer a consumer: Paragraph 3 specifies only "an aspect" of the general "principle in the form of a basic clause" provided for in § 879(1): "Any contract that … is *contra bonos mores* is null and void " (see *Rummel, Bürgerlichen Gesetzbuch (Civil Code)*, 1990, note 2 to §897). This rule applies to private law contracts of all kinds (*supra* at no. 4).

The arbitration clause is a contractual provision that does not stipulate one of the material duties which the parties are mutually obligated to perform.

It grossly disadvantages the Respondent under the circumstances of the case. The Claimant does not form autonomous decisions in Amsterdam, but is controlled by the American headquarters [Doctor's Associates, Inc.]. That explains its interest in having the arbitration venue be in New York, but it does not justify forcing the Respondent to appear in New York for the oral hearing. The American parent company controls over 20,000 franchisees worldwide, which gives it oppressive superiority over the Respondent. For [Subway], it is a simple matter to reach a judicial forum that have jurisdiction over the Respondent. It has a network of advisors in Germany and an attorney available to represent it on a permanent basis. For the Respondent, it was unequally harder to attend a hearing in New York and to use an American lawyer who could properly represent him there. It is not a question of the price of an airline ticket. The deciding factor is the Respondent's difficulties in orientation in New York.

The franchise contract itself was performed in Germany. The license does belong to the American parent company, but was granted to individual franchisee in Europe by the Dutch subsidiary. Both sides performed all other contractual duties in Germany. There is no justifiable reason, apart from the convenience for the Claimant's parent company, to have a franchisee, who sells sandwiches and salads in [Meissen], Germany, travel to New York to settle his dispute with the Claimant. (See Semel Aff., Ex K at Ex. A, ¶¶12-18)

There is no material difference in the relevant facts of these cases. In the Bremen decision, the franchisee operated three franchises, just like Petitioner, and all the franchisees operated locally in foreign locations. The contracts are identical, and thus Subway should be precluded from relitigating the fact that New York is an inappropriate forum.

6

Subway chose the law of Liechtenstein – Section 13 states that the choice of Liechtenstein law was "to accomplish [Respondent's affiliate's] goal," and that Respondent's affiliate "directs" the choice of Liechtenstein law. Subway cannot now complain that Liechtenstein law does not provide what it wants, nor evade the fact that Liechtenstein law declares "null and void" the forum clauses that might survive under the law of New York or some other jurisdiction. Respondent made this bed and must now lie in it.

IV.    The Demand For Arbitration Does Not Comply With
       The Agreement Between The Parties And Is Inadequate On Its Face

The Agreement states that "The parties agree to first notify each other in writing of any Dispute. The written notice will specify, to the fullest extent possible, the notifying party's version of facts and all elements of the Dispute." Semel Aff., Ex. B, §10(a).

Petitioner received no written notice from Respondent of the alleged breaches in advance of the filing of the Demand for Arbitration. Furthermore, the only description of claims given in the Demand for Arbitration is in the "Nature of Dispute" section, where Respondent states only that "the franchisees have breached their franchise agreement."

This violates the terms of the Agreement. Moreover, even beyond the express requirements of the Agreement, New York Courts hold that arbitration demands that provide no particularized description of the dispute are invalid because they do not even allow a decision to be made about the arbitrability of the dispute. See Board of Educ. v. Palmyra-Macedon Faculty Ass'n, 78 A.D.2d 765, 766, 433 N.Y.S.2d 643, 644 (4th Dep't 1980) (staying arbitration because demand was "so broad that the court is not able to rule on the threshold issues of arbitrability."); Nager Elec. Co. v. Weisman Constr. Corp., 29 A.D.2d 939, 939, 289 N.Y.S.2d 473, 474 (1st Dep't 1968) (staying arbitration where portion of demand did not state the specific nature of the

7

controversy to be arbitrated, and court found that "[a]n arbitration tribunal may not award relief based upon any such catchall demand.")

V.    Respondent Must Pay Petitioner's Attorneys' Fees
      and Expenses Pursuant To The Agreement

The Agreement calls for all expenses and attorneys' fees to be awarded to Petitioner in this situation, stating that: "If a party… commences any arbitration… in any forum except where permitted under this Paragraph 10" or "if party defaults under any other provision of this Paragraph 10," the "[t]he defaulting party will be responsible for all expenses incurred by the other party… including lawyers fees and will be liable for abuse of process." See Semel Aff., Ex. B, § 10(i).

Granting attorneys' fees and Petitioner's expenses in this case is in accordance with the Agreement and entirely just. The Agreement calls for them. Respondent forced Petitioner to bring this proceeding or suffer a default. Petitioner notified Respondent and ADRC that ADRC was not allowed under the Agreement and  requested that Respondent withdraw the Demand for Arbitration.  However they ignored the request and proceeded improperly anyway, leaving Petitioner no option but to drain his limited resources to fight this battle or else bear the risk and stigma of a default judgment.  The contractual provision awarding expenses including attorneys' fees should be enforced.

8

CONCLUSION

For all of the foregoing reasons, and upon the accompanying Affidavit of Benjamin K.

Semel, the court should grant the Verified Petition and award Petitioner:

(a)   a permanent stay of the Respondent's arbitration involving the ADRC agency;

(b)   a permanent stay of Respondent's arbitration against Petitioner in the New York

forum, based on the Liechtenstein law of the Agreement and the collateral

estoppel of the German court decisions that were litigated by Respondent;

(c)   attorneys' fees and expenses, including but not limited to the costs and

disbursements of this proceeding, pursuant to Section 10(i) of the parties'

Agreement; and

(d)   such other and further relief as the Court may seem just and proper.


Dated: New York, New York
       November  30, 2010


                                    Respectfully submitted,

                                    PRYOR CASHMAN LLP

                                    By: _____
                                        Gideon Cashman
                                        Benjamin K. Semel
                                        7 Times Square
                                        New York, New York 10036
                                        (212) 421-4100

                                    *Attorneys for Petitioner*

9

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

*In the Matter of the Application of*

GLEN P. FARRELL,

                            Petitioner

*for Judgment Pursuant to CPLR 7503(b)
Staying the Arbitration Sought by*

SUBWAY INTERNATIONAL B.V.,
a Netherlands corporation,

                           Respondent.

**NOTICE OF PETITION**

Index No.: 115634/2010

Date Purchased: 12/2/10

---

PLEASE TAKE NOTICE that, upon (1) the Verified Petition filed on December 1, 2010, a copy of which is attached hereto, (2) the Affirmation of Benjamin K. Semel dated November 30, 2010 and exhibits thereto, and (3) the Memorandum of Law In Support Of The Verified Petition To Stay Arbitration, an application will be made at Room 130 of the Courthouse, located at 60 Centre Street, New York, New York, on December 16, 2010, at 9:30 a.m., or as soon thereafter as counsel may be heard, for judgment granting the relief requested in the Petition, and

PLEASE TAKE FURTHER NOTICE, that, pursuant to CPLR 403(b), the answer and supporting papers, if any, shall be served at least seven (7) days before the date on which the Petition is noticed to be heard.

This is a proceeding pursuant to CPLR 7503(b) for judgment staying the arbitration sought by Respondent against Petitioner.

New York County is designated as the venue of this proceeding because Respondent

1054427

chose this county as the location of the arbitration hearings that Petitioner seeks to stay.

Dated: December 1, 2010
    New York, New York

PRYOR CASHMAN  LLP

By:

    Gideon Cashman
    Benjamin K. Semel
    7 Times Square
    New York, New York 10036
    (212) 421-4100

    Attorneys for Petitioner

**Verified Petition**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

*In the Matter of the Application of*

GLEN P. FARRELL,

                    Petitioner

*for Judgment Pursuant to CPLR 7503(b)*
*Staying the Arbitration Sought by*

SUBWAY INTERNATIONAL B.V.,
a Netherlands corporation,

                    Respondent.

**VERIFIED PETITION FOR A
STAY OF ARBITRATION
UNDER CPLR 7503(b)**

Index No.:

---

       Glen P. Farrell ("Petitioner"), by his attorneys Pryor Cashman LLP, as and for his

verified petition for a stay of arbitration filed by Respondent, alleges as follows:

**The Parties**

       1.      Petitioner is a citizen of the Republic of Ireland and operates three franchises of

the worldwide retail food chain Subway in the city of Dublin, Ireland.

       2.      Upon information and belief, Subway International, B.V. ("Respondent") is a

Netherlands corporation with offices located at Prinsengracht 13, 1015 DK, Amsterdam, The

Netherlands, and is engaged in the business of sub-licensing the Subway trademarks and trade

names for franchises located exclusively outside of the United States. Nonetheless, Respondent

has filed a Demand for Arbitration against Petitioner in New York, seeking among other things

the termination of Petitioner's franchise in Ireland.

       3.      Petitioner has not participated in the arbitration brought by Respondent and has

not been served with an application to compel arbitration.

                                                       Page 1 of 6

### The Background Events In Ireland

4.      Petitioner has done business in Ireland since 2005 pursuant to franchise agreements with Respondent to operate Subway sandwich stores in Dublin.  None of the events related to disputes involving Petitioner took place in the United States.

5.      Beginning in 2009, Petitioner complained to Respondent of improper and illegal conduct taken by affiliates of Respondent in Ireland.  Among the conduct that Petitioner complained of was that a new franchise had been approved at a location in close proximity to one of his existing stores, to cause a dramatic effect on the sales of his existing store.  However, despite lodging complaints with the appropriate parties, including the Subway ombudswoman and even with Subway president Fred De Luca, Petitioner received no adequate response to his inquiries about violations of procedure in the process of this franchise approval.

6.      Petitioner also discovered in 2009 that he had been forced to pay fees to the solicitors for Subway Development Agents in Ireland in contravention of local laws of Ireland. After being refused a repayment of the converted fees, Petitioner brought a claim against the Development Agents in the High Court in Ireland, based on illegal conduct unrelated to any Franchise Agreement with Respondent.  This case is currently being litigated.

7.      Upon information and belief, in response to Petitioner standing up for his rights under Ireland law, Respondent has sought to bully Petitioner by bringing an arbitration here in the United States in violation of their Franchise Agreement.

8.      Petitioner does not seek to avoid a valid arbitration of valid claims.  Rather, Petitioner objects to the improper proceedings begun by Respondent, in breach of their agreement, for the purpose of intimidating Petitioner into submission with foreign legal proceedings.

**The Choice Of Arbitration Agency Does Not Comply With The Agreement**

9.     On September 9, 2010, Respondent filed a Demand For Arbitration (the "Demand") with the American Dispute Resolution Center, Inc. ("ADRC") relating to Petitioner's Franchise Agreement #45720 (the "Agreement"). The demand requests "New York, NY" as the hearing locale for the arbitration.

10.     The filing of the Demand with ADRC was in violation of the Agreement, which prohibits a party from unilaterally choosing the arbitration agency. Section 10(c) of the Agreement states that that:

> [A]rbitration will be held in accordance with the United Nations Commission on International Trade Regulations and Law (UNCITRAL) Arbitration Rules administered by an arbitration agency, such as the International Centre for Dispute Resolution, an affiliate of the American Arbitration Association.

11.     The UNCITRAL Arbitration Rules do not allow Respondent to choose ADRC as agency. They state that "either party may propose to the other" the names of individual arbitrators or an appointing authority that would propose an arbitrator. However there is an express provision to deal with the situation in which the parties do not agree on the arbitration agency, which states that "if no appointing authority has been agreed upon by the parties... either party may request the Secretary-General of the Permanent Court of Arbitration at The Hague to designate an appointing authority."

12.     Petitioner did not agree to the use of ADRC, nor was ADRC designated by the Secretary-General of the Permanent Court of Arbitration at The Hague. ADRC is also not affiliated with the International Centre for Dispute Resolution or the American Arbitration Association. The filing with ADRC was in plain breach of the Agreement.

**The Choice Of New York As Forum Is Invalid Under The Law Governing The Agreement**

13.      Even though New York is listed as the forum for arbitration in the Agreement, this clause has been ruled unenforceable and invalid under the law governing the Agreement. Pursuant to Section 13, the Agreement is governed by the law of the Principality of Liechtenstein (a European microstate), without reference to its conflicts of law.

14.      The arbitration provision of the Agreement does not determine one of the mutual main performances of the contract, and it grossly disadvantages Petitioner under the circumstances of the case.  It is thus null and void under Section 879(3) of the Austrian Civil Code, which is incorporated by Liechtenstein as its governing law.

15.      Respondent has already litigated this precise issue before multiple German courts and lost.  These courts ruled that under Liechtenstein law, the arbitration provision that requires the franchisee to come to New York for arbitration is invalid.

16.      The law of Liechtenstein is written in German, the official language of Liechtenstein.  Thus, the decisions of German courts on the interpretation of these laws should be accorded additional weight and Respondent should be estopped from relitigating the issue again before this court.

**The Failure To Give Notice And State Claims Does Not Comply With The Agreement**

17.      The Demand is in further violation of the Agreement because it was filed before any notice was given.  Petitioner received no written notice from Respondent of the alleged breaches in advance of filing the Demand, though the Agreement states: "The parties agree to first notify each other in writing of any Dispute.  The written notice will specify, to the fullest extent possible, the notifying party's version of facts and all elements of the Dispute."  Ex. B,

Sect. 10(a).  Section 10(a) further provides for a period of at least 30 days and the use of best efforts to communicate before the filing of any arbitration.

18.     The Demand does not describe the nature of the claims against Petitioner, stating only that "the franchisees have breached their franchise agreement." Nor has Respondent used any reasonable efforts to communicate with Petitioner regarding any alleged dispute.  Upon information and belief, Respondent's arbitration is not filed in good faith, but is simply an attempt to bully Petitioner by forcing him to expend legal fees in a faraway forum.

**Under The Agreement, Respondent Must Pay Petitioner's Attorneys' Fees and Expenses**

19.     Under Section 10(i) of the parties' Agreement: "If a party... commences any arbitration... in any forum except where permitted under this Paragraph 10" or "if a party defaults under any other provision of this Paragraph 10," then "[t]he defaulting party will be responsible for all expenses incurred by the other party... including lawyers fees and will be liable for abuse of process."

20.     Respondent's arbitration filing – with the improper agency ADRC and without giving advance notice and without stating the nature of the claims against Petitioner was in flagrant breach of the arbitration agreement, and was moreover calculated to force Petitioner to spend maximum legal fees.  Such actions should not be permitted, and attorneys' fees and expenses on this motion should be awarded to Petitioner pursuant to the Agreement.


WHEREFORE, Petitioner respectfully prays that this Court grant this Verified Petition and issue judgment granting:

(a)     a permanent stay of the Respondent's arbitration involving the ADRC agency;

(b)    a permanent stay of Respondent's arbitration against Petitioner in the New York forum, based on the Liechtenstein law of the Agreement and the collateral estoppel of the German decisions that were litigated by Respondent;

(c)    attorneys' fees and expenses, including the costs and disbursements of this proceeding, pursuant to Section 10(i) of the parties' Agreement; and

(d)    such other and further relief as the Court may seem just and proper.


Dated:    November 30, 2010
          New York, New York

                        PRYOR CASHMAN  LLP

                        By: _____
                          Gideon Cashman
                          Benjamin K. Semel
                          7 Times Square
                          New York, NY 10036
                          (212) 421-4100

                          *Attorneys for Petitioner*

## **VERIFICATION**

**GLEN P. FARRELL**, being duly sworn, deposes and says:

I am the Plaintiff in the within application.  I have read the foregoing Verified

Petition and know the contents thereof; the same is true to my own knowledge, except as

to those matters therein stated to be alleged upon information and belief, and as to those

matters I believe them to be true.

GLEN P. FARRELL

Slovak Republic                )
District of Bratislava          )
City of Bratislava              ) ss
Embassy of the United           )
States of America               )

Sworn to before me on this

18th day of November, 2010

LYN DEBEVOISE
VICE CONSUL OF THE
UNITED STATES OF AMERICA