UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -    x

GLEN P. FARRELL,                                 :

    Petitioner,                       :

  -- against --                                      :

SUBWAY INTERNATIONAL, B.V.,        :

    Respondent.                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -    x

Case No.  11 civ. 0008
(JFK)(AJP)


**SUBWAY'S MEMORANDUM OF LAW
IN OPPOSITION TO THE PETITION TO STAY ARBITRATION**


Dated:  January 10, 2011

KAUFMAN & KAHN, LLP

Mark S. Kaufman
 (Email:  kaufman@kaufmankahn.com)
Robert L. Kahn
 (Email:  kahn@kaufmankahn.com)
 Attorneys for Subway International, B.V.
747 Third Avenue, 32nd Floor
New York, NY  10017
(212) 293-5556

# TABLE OF CONTENTS

I.   Background Facts ............................................................................................................. 2

II.  The Applicable Legal Standard ....................................................................................... 4

ARGUMENT .......................................................................................................................... 6

    A.   The Franchise Agreement is Subject to the New York Convention and the Federal
Arbitration Act ................................................................................................................ 6

    B.   Under Lichtenstein Law, the Franchise Agreement's Arbitration Provisions Are
Enforceable ..................................................................................................................... 7

    C.   Arbitration in New York Is Appropriate and Mandated by the Parties' Agreement ..... 11

    D.   The Choice of Arbitration Organization Complies with the Franchise Agreement ....... 11

    E.   The Demand for Arbitration Is Sufficient and Proper ...................................................... 17

    F.   Subway, Rather Than Petitioner, Is Entitled to Attorneys' Fees and Expenses ................. 18

CONCLUSION ....................................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

Alfadda v. Fenn, 966 F. Supp. 1317 (S.D.N.Y. 1997).................................................... 11

Arbitration between Oltchim, S.A. v. Velco Chemicals, Inc., 348 F. Supp.2d 97, 100 (S.D.N.Y.2004) .................................................................................................... 15

B.D. Cooke & Partners Ltd. v. Certain Underwriters at Lloyd's, London, 606 F. Supp.2d 420, 423-24 (S.D.N.Y. 2009).......................................................... 8

Bd. of Ed. of Palmyra-Macedon Central School Dist. v. Palmyra-Macedon Faculty Assoc., 78 A.D.2d 765, 766, 433 N.Y.S.2d 643, 644 (4th Dep't 1980)...................................... 21

Bd. of Ed. of Cattarugus Central School v. Cattarugus Teacher's Assoc., 84 A.D.2d 685, 686, 447 N.Y.S.2d 51, 53-54 (4th Dep't 1981) ...................................................... 22

Bd. of Ed. of Newfane Central School District v. Newfane Teachers Assoc., 54 A.D.2d 1119, 1120, 388 N.Y.S.2d 789, 791 (4th Dep't 1976)....................................................... 21

Bergesen v. Joseph Muller Corp., 710 F.2d 928, 932-33 (2nd Cir. 1983)................................ 5, 6

Blatt v. Sochet, 199 A.D.2d 451, 606 N.Y.S.2d 11 (2nd Dep't., 1993)................................ 18, 19

Brooke Group Ltd. v. JCH Syndicate 488, 87 N.Y.2d 530, 640 N.Y.S.2d 479 (1996)................ 17

Builders Group LLC v. Qwest Communications Corporation, No. 07 Civ. 5464 (DAB), 2009 WL 3170101 (S.D.N.Y., Sept. 30, 2009),.......................................................... 14, 15

Chelsea Square Textiles, Inc. v. Bombay Dyeing and Mfg. Co., Ltd., 189 F.3d 289, 294 (2nd Cir. 1999) ........................................................................................................ 6

Curley v. AMR Corp., 153 F.3d 5, 12-13 (2nd Cir. 1998).................................................. 9

David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (London), 923 F.2d 245, 248 (2nd Cir. 1991) ............................................................................................................ 7

Drakeford v. Washington Mutual, No. 07 Civ. 03489(GBD), 2008 WL 2755838, *1-2 (S.D.N.Y., July 11, 2008)................................................................................................ 16

Dumitru v. Princess Cruise Lines, Ltd., Nos. 09 Civ. 4792 (NRB) and 10 Civ. 1790 (NRB), 2010 WL 3034226, * 9 (S.D.N.Y., July 29, 2010).................................................. 4, 5

Energy Transport, Ltd. V. M.V. San Sebastian, 348 F. Supp.2d 186, 203 (S.D.N.Y. 2004) ....... 13

Eyewonder v. Abraham,  No. 08 CV 3579 (GBD), 2010 WL 3528882 (S.D.N.Y., Sept. 3, 2010). ........................................................................................................ 19

Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir.2001) ............................................................................................................ 7

Howsam v. Dean Witter Reynolds, 537 U.S. 79, 84, 123 S. Ct. 588, 154 L.Ed.2d 491 (2002)... 15

In re Board of Directors of Hopewell International Insurance Ltd., 238 B.R. 25, 62 (Bankr. S.D.N.Y. 1999)................................................................................................ 4

Liapakis v. Sullivan, 290 A.D.2d 393, 394, 736 N.Y.S.2d 675, 676 (1st Dep't 2002) ................ 18

Margalioth v. Merrill Lynch, 695 F. Supp. 756, fn.1 (S.D.N.Y. 1988)................................ 16, 17

Matter of Arbitration between Continental Grain Company and Foremost Farms, Inc., No. 97 Civ. 0848(DC), 1998 WL 132805, *1 (S.D.N.Y.,  March 23, 1998) ........................................ 5

Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983). ...................................................................................... 6, 15

Nager Elec. V. Weisman Constr. Corp.,  29 A.D.2d 939, 289 N.Y.S.2d 473 (1st Dep't 1968).... 21

Oneonta City School District, Appellant v. Oneonta Teachers Association, 59 A.D.2d 797, 798, 398 N.Y.S.2d 907 (3rd Dep't 1977)..................................................................... 21

Paramedics Electromedicina Comercial, Ltd. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 654 (2d Cir.2004) ........................................................................................................ 7

Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l Inc., 198 F.3d 88, 94-95 (2d Cir. 1999) ...................................................................................................... 5, 6, 9

Twohy v. First Nat'l Bank of Chicago, 758 F.2d 1185, 1193 (7th Cir. 1985). ........................... 10

Universe Sales Co., Ltd. v. Silver Castle, Ltd., 182 F.3d 1036, 1038 (9th Cir. 1999), certiorari denied, 120 S. Ct. 2742, 530 U.S. 1275, 147 L.Ed.2d 1006 (2000) ....................... 10

## Statutes

9 U.S.C. § 1, et seq. .................................................................................................... 5, 6

9 U.S.C. § 202 ............................................................................................................. 6

9 U.S.C. § 203 ............................................................................................................. 4

9 U.S.C. § 205 ............................................................................................................. 4

## Other Authorities

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, T.I.A.S. No. 6997, 21 U.S.T. 2517, 1970 WL 104417 (U.S. Treaty) ............................................................. 4

## Rules

F. R. Civ. P. 81(a)(6)(B). ............................................................................................... 4

Fed.R.Civ.P. 44.1 ......................................................................................................... 7

## SUBWAY'S MEMORANDUM OF LAW
## IN OPPOSITION TO THE PETITION TO STAY ARBITRATION

Subway International, B.V. ("Subway"), respondent in the underlying proceeding, hereby opposes the petition of Glenn P. Farrell ("Petitioner") under which Petitioner seeks to stay arbitration that Subway commenced.  Facts and documents supporting this Memorandum of Law are set forth in the accompanying Declaration of Tricia Lee dated January 10, 2011 ("Lee"), and the Declaration of Dr. Ernst Walch dated January 7, 2011 ("Walch").

Subway is an international franchisor of the renowned SUBWAY restaurants, and is a Netherlands limited liability company with a principal office in Amsterdam.[1]  Petitioner is a franchisee who co-owns three SUBWAY restaurants in Dublin, Ireland, only one of which is at issue in the arbitration.  See Lee ¶¶ 9-10.  Subway commenced arbitration with the Arbitration Dispute Resolution Center (the "ADR Center") in New York, pursuant to its franchise agreement dated August 20, 2008 with Petitioner (the "Franchise Agreement"), due to Petitioner's failure to pay royalties and advertising fees owing for one of the restaurants.  See Lee ¶¶ 15-21, and Ex. A, E.

Petitioner attempts to hold himself out as a hapless victim and Subway as a "bully" who engages in "intimidating" tactics, solely because Subway commenced arbitration here, in New York City, pursuant to the Franchise Agreement.   Despite the plain terms of this agreement with Subway, Petitioner seeks to avoid arbitration by the Arbitration Dispute Resolution Center (the

---

[1] Doctor's Associates Inc. ("DAI") owns the distinctive proprietary system for establishing and operating restaurants featuring sandwiches and salads under its trade name and service mark SUBWAY (the "System").  DAI has licensed to Subway Systems International Anstalt, a Liechtenstein establishment with a principal office in Triesenberg, Liechtenstein, to use the System in countries outside the United States, Canada, and Australia, in order to establish and sublicense others to establish SUBWAY restaurants.  Subway Systems International Anstalt granted a license to Subway International, B.V., to operate and to franchise others to operate SUBWAY restaurants using the System in the Republic of Ireland.  See Lee, ¶¶ 4-8.

"ADR Center") or, alternatively, to avoid arbitration in New York, as if any such proceeding is presumptively unfair.

However, neither the applicable law nor the circumstances support the petition. First, Paragraph 10.d. of the Franchise Agreement expressly provides that arbitration shall take place in New York, and Petitioner's claim seeks to undermine and eviscerate that clause. Further, Petitioner is not some unsophisticated sandwich-maker, but a sophisticated businessman who is co-founder and director of the 'Irish Chamber of Commerce' in Slovakia and an executive with a medical distribution company based in Slovakia, located approximately 1,075 miles from Dublin, Ireland. See Lee ¶¶ 11-14. The applicable arbitration rules do not require Petitioner to attend the arbitration. See Walch ¶ 60; Semel Affirmation dated November 30, 2010, Ex. C, Article 4. Even if Petitioner wished to personally participate, such attendance would not be unduly burdensome on a resident of Ireland and Slovakia, especially for someone who routinely travels substantial distances for business.

Despite his mischaracterization of the facts – including that Subway did not provide proper notice of the dispute before commencing arbitration – and of the law, Petitioner cannot avoid the simple conclusion that agreements to arbitrate international disputes are strictly enforced under Chapter 2 of the Federal Arbitration Act; that his agreement expressly provides for arbitration in New York; and that the arbitration was properly commenced with an appropriate agency, the ADR Center.

## I.   **Background Facts**

The Franchise Agreement broadly provides that "any dispute or claim arising out of this Agreement" is subject to arbitration; that arbitration will be determined under the United Nations International Commission on Trade Regulations and Law ("UNCITRAL") arbitration rules by an

arbitration agency; that such arbitration shall take place in New York, New York; that the arbitration clause's provisions are severable; that the parties waive any objection to an inconvenient forum; and that the Agreement will be governed by and construed under the substantive law of Liechtenstein.

Specifically, the Franchise Agreement provides, in part, as follows:

10. **DISPUTE RESOLUTION.** The parties want to settle all issues quickly, amicably, and in the most cost effective fashion. To accomplish these goals, the parties agree to the following provision that will apply to resolve any dispute or claim arising out of relating to this Agreement, or any other Franchise Agreement the parties have with each other (a "Dispute"): . . . .

c.      The parties will arbitrate any Dispute the parties do not settle under the discussion procedures above, and any Dispute which this Agreement provides will be submitted directly to arbitration, except as provided in this Agreement. The arbitration will be held in accordance with the United Nations Commission on International Trade Regulations and Law (UNCTIRAL) Arbitration Rules administered by an arbitration agency, such as the International Centre for Dispute Resolution, an affiliate of the American Arbitration Association. The arbitration will be conducted in English .... Except as provided in this Agreement, a party must commence and pursue arbitration to resolve Disputes before commencing legal action. . . .

d.      The parties agree that New York, New York, USA shall be the site for all arbitration hearings held under this Paragraph 10.

e.      If a court of competent jurisdiction decides the requirement to arbitrate a Dispute is unenforceable because applicable law does not permit the type of claim involved to be resolved by arbitration, or because the Agreement limits a party's rights or remedies in a manner applicable law does not permit, or for any other reasons, then under Subparagraph 11.c., the entire arbitration clause is not void. Only the portions of the arbitration clause with respect to such claim or claims as are necessary to comply with applicable law will be invalid and considered severable, but the remainder will be enforced. . . .

l.      The parties submit to the jurisdiction of any tribunal or court in accordance with Subparagraph 10.c. and Subparagraph 10.k., for arbitration or litigation of any Dispute, and waive any right to object to the location being inconvenient. . . .

13.      **GOVERNING LAW**. This Agreement will be governed by and construed in accordance with the substantive laws of Liechtenstein, without reference to its conflicts of law, except as may otherwise be provided in this Agreement.

3

See Lee Ex. A at ¶¶ 11-12, 16.

## II.   **The Applicable Legal Standard**

Arbitration agreements involving at least one foreign citizen (or a U.S. citizen and enforcement of arbitration regarding subject matter located abroad), are enforced under a treaty entered into in New York City in 1958, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, T.I.A.S. No. 6997, 21 U.S.T. 2517, 1970 WL 104417 (U.S. Treaty) (the "Convention" or the "New York Convention"), Article II, duly ratified by the United States, Ireland and The Netherlands, among others.  The Convention requires courts to enforce written arbitration clauses in international commercial contracts as the mechanism to resolve international commercial disputes arising out of them, see Convention, Art. II ¶ 2.  An arbitration clause will not be recognized only if it is "null and void, inoperative or incapable of being performed." Convention, Art. II ¶ 3. Courts have determined that the Convention's "null and void" clause includes "only those situations -- such as fraud, mistake, duress, and waiver – that can be applied neutrally on an international scale." Dumitru v. Princess Cruise Lines, Ltd., Nos. 09 Civ. 4792 (NRB) and 10 Civ. 1790 (NRB),  2010 WL 3034226, * 9 (S.D.N.Y., July 29, 2010).

The United States enabled the Convention in Chapter 2 of the Federal Arbitration Act (the "Act").  See 9 U.S.C. § 201, et seq.  See also, e.g., In re Board of Directors of Hopewell International Insurance Ltd., 238 B.R. 25, 62 (Bankr. S.D.N.Y. 1999).

The district courts have original jurisdiction over cases arising under the Convention.  9 U.S.C. § 203.  Actions relating to an arbitration agreement falling under the Convention may be removed from state courts to the district court where the action is pending.  9 U.S.C. § 205.  See, e.g., Dumitru, 2010 WL 3034226, * 14.  See also F. R. Civ. P. 81(a)(6)(B).

Even if both parties are foreign citizens, Federal courts in New York have subject matter jurisdiction, under the Convention, to enforce an agreement to arbitrate between foreign citizens where the agreement chooses New York as the place of arbitration. Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l Inc., 198 F.3d 88, 94-95 (2d Cir. 1999) (affirming order to compel arbitration). See also Bergesen v. Joseph Muller Corp., 710 F.2d 928, 932-33 (2nd Cir. 1983) (enforcing arbitration award between two foreign citizens); Matter of Arbitration between Continental Grain Company and Foremost Farms, Inc., No. 97 Civ. 0848(DC), 1998 WL 132805, *1 (S.D.N.Y., March 23, 1998) (same). Thus, this Court may enforce arbitration agreements between two foreign citizens, as well.

The treaty and language of the Convention "should be interpreted broadly to effectuate its recognition and enforcement purposes." Bergesen, 710 F. 2d at 933. The Act (including the Convention, enabled therein) provides courts with a variety of tools designed to encourage parties to resolve by arbitration matters within the scope of their agreement. See 9 U.S.C. § 1, et seq. The Supreme Court has held that the lower courts should maintain a "healthy regard" for the Act's underlying policy and to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration. Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983).

> The existence of any broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. . . . If the allegations underlying the claims 'touch matters' covered by the parties' . . . agreements, then those claims must be arbitrated.

Smith/Enron Cogeneration, 198 F.3d at 99. See also Chelsea Square Textiles, Inc. v. Bombay Dyeing and Mfg. Co., Ltd., 189 F.3d 289, 294 (2nd Cir. 1999) (enforcing agreement between U.S. and Indian entities to arbitrate in India). Notably, "[t]he Federal policy favoring the liberal

enforcement of arbitration clauses . . . applies with particular force in international disputes."
Paramedics Electromedicina Comercial, Ltd. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645,
654 (2d Cir.2004); see also David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (London),
923 F.2d 245, 248 (2nd Cir. 1991) (under the Convention, "Enforcement of international arbitral
agreements promotes the smooth flow of international transactions by removing the threats and
uncertainty of time-consuming and expensive litigation.").

When considering a motion to compel arbitration under the Federal Arbitration Act, a
court must determine: "(1) whether there exists a valid agreement to arbitrate at all under the
contract in question . . . and if so, (2) whether the particular disputes sought to be arbitrated fall
within the scope of the arbitration agreement." Hartford Accident & Indem. Co. v. Swiss
Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir.2001) (quotation and citation omitted). See
also Threlkeld, 923 F.2d at 249.


## ARGUMENT

### A. The Franchise Agreement Is Subject to the New York Convention and the Federal Arbitration Act

The Convention, as codified in the Act, applies to the facts at hand. The Franchise
Agreement is clearly a "contract evidencing a transaction involving commerce", as "commerce"
is defined in the Act. See 9 U.S.C. §§ 1, 2. The Franchise Agreement provides that arbitration
shall take place between the Petitioner (a citizen and/or resident of Ireland) and Subway (a
corporation formed under the laws of the Netherlands). Thus, their agreement arises out a
commercial relationship that is not "entirely between citizens of the United States". See 9
U.S.C. § 202. In any event, the dispute arises out of performance under the Franchise
Agreement of SUBWAY restaurants located in Ireland. Thus, the present dispute "arising out

of" the Franchise Agreement "involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." Id. Thus, the dispute falls under the Convention.

As set forth above, under the Convention, the Court need only determine (1) whether there exists a valid agreement to arbitrate at all under the contract in question and if so, (2) whether the particular disputes sought to be arbitrated fall within the scope of the arbitration agreement.

As for the first element, Petitioner does not contest that the Franchise Agreement is a valid agreement, or that the agreement to arbitrate is not set forth therein. Rather, Petitioner purportedly only contests whether arbitration was commenced properly.

As for the second element, the arbitration clause in the Franchise Agreement is quite broad: a "Dispute" is defined as "any dispute or claim arising out of relating to this Agreement", and "The parties will arbitrate any Dispute". See Lee Ex. A, ¶ 10 and 10.c. Thus, under the Federal policy favoring liberal enforcement of arbitration clauses as set forth in the Convention, the Act, and the foregoing cases, the Court should enforce the Subway and Petitioner's agreement to arbitrate. See, e.g., B.D. Cooke & Partners Ltd. v. Certain Underwriters at Lloyd's, London, 606 F. Supp.2d 420, 423-24 (S.D.N.Y. 2009) (provision requiring arbitration for disputes "arising under" the contract was sufficiently "broad in scope"; granting motion to stay action and to compel arbitration, under New York Convention); Smith/Enron Cogeneration, 198 F.3d at 90, 99 (same).

### B. Under Lichtenstein Law, the Franchise Agreement's Arbitration Provisions Are Enforceable

Fed.R.Civ.P. 44.1 allows district courts to determine foreign law through consideration of "any relevant material or source, including testimony, whether or not submitted by a party or

admissible under the Federal Rules of Evidence." Even under the flexible provisions of Rule 44.1, Petitioner has provided an inadequate submission. See Curley v. AMR Corp., 153 F.3d 5, 12-13 (2nd Cir. 1998).

Petitioner acknowledges that Liechtenstein law applies in this case. However, Petitioner has failed to annex to its motion papers the pertinent statutes, case law, and interpretations of the law by Liechtenstein attorneys, or anyone else with expertise or experience in Lichtenstein law. Rather, Petitioner's counsel summarily concludes that German law should control. Even if German law was a persuasive indicator of Liechtenstein law, Petitioner has merely presented copies and translation of two cases from Germany courts, which purportedly apply Austrian statutory law to interpret the law of Lichtenstein. Petitioner has not demonstrated that the two foreign cases he provided – even if *arguendo* they were miraculously accurate in their analysis of two other countries' laws – represent current or precedential law in Lichtenstein. Something more concrete might have been expected of Petitioner than the conclusory nature of his (U.S.) attorney's affidavit, which largely fails to discuss the substantive law of Lichtenstein itself. See Twohy v. First Nat'l Bank of Chicago, 758 F.2d 1185, 1193 (7th Cir. 1985).

Indeed, Petitioner has wholly misrepresented Lichtenstein law. As set forth in detail in the Declaration of Dr. Ernst Walch, an experienced attorney admitted to practice in New York and in Lichtenstein, agreements to arbitrate generally, and the Franchise Agreement in particular, are enforceable under the laws of Lichtenstein (the law governing the Franchise Agreement). See Walch ¶¶ 34-70. See also Lee Ex. A at ¶ 13. In the absence of the Court's own research into Lichtenstein law, as permitted by Rule 44.1, the Court should consider Dr. Walch's opinion to be conclusive or, at least, undisputed by Petitioner. See Universe Sales Co., Ltd. v. Silver Castle, Ltd., 182 F.3d 1036, 1038 (9th Cir. 1999), certiorari denied, 120 S. Ct. 2742, 530 U.S. 1275, 147

L.Ed.2d 1006 (2000) ("expert testimony accompanied by extracts from foreign legal materials has been and will likely continue to be the basic mode of proving foreign law.").

Dr. Walch explains in his declaration that German case law and German legal writing are not precedential or persuasive in Liechtenstein and are seldom relied upon by the Liechtenstein courts when construing the provisions of the Liechtenstein Civil Code. Walch ¶¶ 20-25. In fact, according to Dr. Walch, the German courts are not sufficiently familiar with Liechtenstein law is evidenced by the two rulings of German courts cited by Petitioner's counsel. In both decisions, the German courts mistakenly state that "the Austrian Civil Code applies in Liechtenstein." This statement, as set forth in Dr. Walch's declaration, is factually incorrect. Walch ¶¶ 26-29.

Thus, Petitioner's reliance on cases addressing collateral estoppel and issue preclusion are simply irrelevant, because a Lichtenstein court would not be bound or even persuaded by a German court's view of Lichtenstein law. By way of example, only, it would be absurd for the decision in Alfadda v. Fenn, 966 F. Supp. 1317 (S.D.N.Y. 1997) (cited in Petitioner's Memo. at 5), to preclude plaintiffs from "re-litigating issues previously resolved by a French court" if the French court had relied on an erroneous understanding of Italian law.

Dr. Walch states that the choice of New York as the venue for the arbitration would be enforceable under Liechtenstein law, unless the New York venue resulted in a "gross disadvantage" to Petitioner. Even if Petitioner demonstrated that the substantially identical German court opinions represented valid German law, and that such decisions had any precedential value in Liechtenstein, those decisions seem to hold, as a matter of law, that any large U.S. franchisor "grossly disadvantages" its European (or at least, German) franchisees. That is, those German courts apparently assume that Subway is "controlled by the American headquarters" and that because allegedly "the American parent controls over 20,000 franchisees

9

worldwide" it *ipse facto* has an "oppressive superiority over the Respondent." See Petitioner's Memo at 6. Subway respectfully submits that, as a matter of public policy, it would be anomalous for this U.S. District Court to grant collateral estoppel to the decision of a foreign court which is xenophobicly presumes that any large, "American" franchisor must, by definition, abuse all its franchisees. Moreover, the German courts improperly assume, that requiring arbitration pursuant to the parties' agreement is an unfair imposition.

However, as shown in Dr. Walch's declaration and as set forth below, Petitioner is not grossly disadvantaged by having the arbitration conducted in New York.

Conducting the arbitration in New York would not disadvantage the Petitioner nor improperly restrict or complicate Petitioner's ability to assert claims and/or defensives in the proceeding. Rather, Petitioner would need to communicate with a New York attorney instead of a Dublin or Amsterdam attorney. As evidenced by this proceeding, Petitioner has the means to engage counsel located in New York.

Petitioner has no language barrier to overcome in order to communicate with a New York attorney. Therefore, the fact that Petitioner might have to instruct an attorney in New York instead of one in Dublin or in Amsterdam cannot be considered as a gross disadvantage to Petitioner.

Indeed, under UNCITRAL rules, Petitioner is not even required to travel to New York to defend the arbitration. Rather, the arbitrator can readily resolve the dispute over Subway's demand for royalty and advertising fees based upon the gross receipts of Farrell's store upon the submission of documents by the parties.

Even if Petitioner wished to attend the hearing, such attendance would not constitute a substantial financial burden. Travel expenses from Ireland to New York are not substantially

higher than travel expenses from Ireland to a city of continental Europe (such as Amsterdam, where Subway is based).   Attorneys' fees for all New York attorneys are not necessarily substantially higher than the attorneys in Dublin or Amsterdam.

Thus, there is no "gross disadvantage" to Petitioner to arbitrate in New York so that, under Liechtenstein law, the agreement to so arbitrate is readily enforceable, according to Dr. Walch.  Walch ¶¶ 41-70.

Thus, Petitioner fails to refute that the parties entered into an agreement to arbitrate, and that their dispute arises out of said agreement.  Pursuant to the Federal Arbitration Act and the Convention, the parties' dispute should be determined by arbitration.

**C.   Arbitration in New York Is Appropriate and Mandated by the Parties' Agreement**

Petitioner's request to stay arbitration – in any forum – from taking place in New York should be denied, not only because arbitration in this location would not "grossly disadvantage" Petitioner (as set forth above), but also because any such stay would eviscerate the plain meaning of the parties' agreement to arbitrate in New York, New York.   "The cardinal doctrines of contract interpretation instruct courts to read a contractual document in a manner that confers meaning upon all of its terms and renders the terms consistent with one another.  Moreover, courts should avoid an interpretation that makes a contractual provision superfluous." Energy Transport, Ltd. V. M.V. San Sebastian, 348 F. Supp.2d 186, 203 (S.D.N.Y. 2004) (citations omitted) (compelling arbitration and staying action).

**D.   The Choice of Arbitration Organization Complies with the Franchise Agreement**

The Franchise Agreement provides that arbitration will be determined under the UNCITRAL arbitration rules by an arbitration agency, "***such as*** the International Centre for Dispute Resolution [the "ICDR"], an affiliate of the American Arbitration Association."

11

(Emphasis added).  See Lee Ex. A at ¶ 10.c.  Such provision does not mandate that the parties arbitrate before the ICDR, or that the parties must look back to UNCITRAL rules to agree upon another arbitration agency before commencing arbitration.  That is, the parties expressly agreed that any arbitration agency which applies the UNCITRAL arbitration rules, including but not limited to the ICDR, is an appropriate arbitration agency.

Petitioner asserts that Subway should not have commenced arbitration with the Arbitration Dispute Resolution Center (the "ADR Center").  Notably, Petitioner is not proposing that Subway should have commenced arbitration with the ICDR, on the grounds that such arbitration agency is among those specified in the parties' agreement.  Rather, he disingenuously demands that arbitration *should not take place at all* because under the UNCITRAL arbitration rules the parties' choosing an arbitration agency is a condition precedent to arbitration taking place.  Petitioner is wrong.

In Builders Group LLC v. Qwest Communications Corporation, No. 07 Civ. 5464 (DAB), 2009 WL 3170101 (S.D.N.Y., Sept. 30, 2009), the plaintiff contended that defendant had failed to fulfill a condition precedent to arbitrating their dispute under a contractual provision requiring that defendant "file a notice of demand for arbitration with the American Arbitration Association and with Contractor."  However, under the Federal Arbitration Act, although a "gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide ... issue[s] of procedural arbitrability, i.e. whether prerequisites such as time limits, notice, laches, estoppel and other *conditions precedent* to an obligation to arbitrate have been met, are for the arbitrators to decide."  Id., 2009 WL 3170101 at *4 (original emphasis), citing Howsam v. Dean Witter Reynolds, 537 U.S. 79, 84, 123 S. Ct. 588, 154 L.Ed.2d 491 (2002).

The Builders Group court held that whether or not defendant had failed to comply with an alleged condition precedent under was a matter for the arbitrators to decide and not a barrier to defendant's motion to compel arbitration. Builders Group, 2009 WL 3170101, * 5. See Arbitration between Oltchim, S.A. v. Velco Chemicals, Inc., 348 F. Supp.2d 97, 100 (S.D.N.Y.2004) (because case between foreign entities was arbitrable under Convention, lawsuit was dismissed in favor of ongoing arbitration). See also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed.2d 765 (1983) (the "Arbitration Act establishes that, as a matter of Federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver.")

Subway and Petitioner have already agreed on the choice of an appointing authority, as contemplated by the UNCITRAL rules:  an agency "such as" the ICDR, capable of and willing to use the UNCITRAL rules.  The parties agreed to such permissive selection because, for example, the ICDR might dissolve or otherwise stop engaging in arbitrations, and the parties to the Franchise Agreement did not want any such dissolution to bar their arbitration of disputes with another arbitration agency.  However, nothing in the arbitration clause limits the reasons for, or selection of, the agency, and Subway duly selected an agency (the ADR Center) consistent with the parties' agreement.

Moreover, whether the ADR Center is the proper arbitration agency under the Franchise Agreement is a procedural condition precedent is a matter for the arbitrator to decide.  In contrast, the only issues necessary for the Court to determine are whether the parties entered into an agreement to arbitrate, and whether the dispute is arbitrable under said agreement.  Because both such questions are answered in the affirmative, the petition to stay arbitration should be

dismissed. <u>Builders Group</u>, 2009 WL 3170101 at *4-5; <u>Howsam</u>, 537 U.S. at 84, 123 S. Ct. at 592; <u>Oltchim</u>, 348 F. Supp.2d at 100.

Even where an agreement to arbitrate does not specify an arbitration agency, a lawsuit seeking to stay arbitration is subject to dismissal. <u>See</u> <u>Drakeford v. Washington Mutual</u>, No. 07 Civ. 03489(GBD), 2008 WL 2755838, *1-2 (S.D.N.Y., July 11, 2008).

Federal and New York state courts have upheld permissive choices of forum provisions. For example, in <u>Margalioth v. Merrill Lynch</u>, 695 F. Supp. 756, fn.1 (S.D.N.Y. 1988), the court held that where an agreement to arbitrate did not specify which applicable arbitration agency should be used, "Plaintiff's choice of the National Association of Securities Dealers (NASD) as arbitrator should be given effect, as plaintiff was the first to comply with the parties' agreements on how an arbitrator would be named."

In <u>Brooke Group Ltd. v. JCH Syndicate 488</u>, 87 N.Y.2d 530, 640 N.Y.S.2d 479 (1996), plaintiffs commenced an action in New York state court. Defendants had commenced arbitration in London, and its motion to stay the action and compel arbitration was granted. The 1st Department and Court of Appeals affirmed. <u>Id.</u>, 87 N.Y.2d at 533, 640 N.Y.S.2d at 481. The Court of Appeals noted that "parties to a contract may freely select a forum which will resolve any disputes over the interpretation or performance of the contract. Such clauses are prima facie valid and enforceable unless shown by the resisting party to be unreasonable." <u>Id.</u>, 87 N.Y.2d at 534, 640 N.Y.S.2d at 481-82 (parties agreed to "submit to the jurisdiction of a Court of competent jurisdiction within the United States."). The Court of Appeals held that

> The present clause contains no such mandatory language binding the parties to a particular forum, but provides only that the [defendant] underwriters will submit to the jurisdiction of a United States court. The words and phrases used by the parties must, as in all cases involving contract interpretation, be given their plain meaning and the plain meaning of the words used by the parties to this contract do not manifest an intention to limit jurisdiction to a particular forum.

14

Id. (citation omitted). Because the "Service of Suit" clause was permissive rather than mandatory, defendants were not required to litigate the dispute in New York courts, but could seek to dismiss the action and go forward with arbitration. See also Liapakis v. Sullivan, 290 A.D.2d 393, 394, 736 N.Y.S.2d 675, 676 (1st Dep't 2002) (provision in resignation agreement constituted nothing more than a permissive "Service of Suit Clause" consenting to jurisdiction, not a mandatory forum selection clause).

Similarly, in the case at hand, the petition to stay arbitration is subject to dismissal because, *inter alia*, the arbitration clause in the Franchise Agreement is prima facie valid and enforceable. The choice of arbitration agency ("such as the International Centre...") is permissive rather than mandatory. The plain meaning of the words used in the Franchise Agreement do not manifest any intent to limit arbitration to the ICDR, or to require any additional agreement as to the arbitration agency. Rather, Petitioner and Subway already agreed to submit to the jurisdiction of any arbitration agency that applies the UNCITRAL arbitration rules, including the ICDR or, among others, the ADR Center. Consistent with the UNCITRAL rules, the parties should arbitrate their dispute with the ADR Center, the agency where Subway already commenced arbitration.

A case cited by Petitioner, even if applicable in the context of this Federal action, actually supports Subway's choice of arbitration agency. In Blatt v. Sochet, 199 A.D.2d 451, 606 N.Y.S.2d 11 (2nd Dep't., 1993), the parties contemplated that any dispute that arose out of the agreement should be determined "under the rules of the American Arbitration Association" rather than through rabbinical arbitration. The court did not invalidate the agreement to arbitrate or specify that the parties submit their claim to a particular arbitration agency, as Petitioner suggests, but concluded that the state court action should be stayed pending arbitration. Id.

Thus, the court directed the parties to arbitrate through any agency where the AAA rules would be used.

Notwithstanding Petitioner's wholesale, irrelevant slurs against the ADR Center and the arbitrator chosen thereby, he suggests no reason why the ADR Center is incapable of applying the UNCITRAL arbitration rules; why the ADR Center's geographic availability to businesses located in Connecticut renders it an inappropriate forum; or why the arbitrator's purported reprimand – for allegedly failing to properly maintain an escrow account in his private practice – would render him unable to serve as an arbitrator. Moreover, it is improper for a court to pre-determine that an arbitrator lacks impartiality. See Eyewonder v. Abraham, No. 08 CV 3579 (GBD), 2010 WL 3528882 (S.D.N.Y., Sept. 3, 2010). Indeed, Petitioner waived his right to protest the selection of the arbitrator by failing to respond to the ADR Center's invitation to engage in selecting an arbitrator. See Lee, ¶ 57.

By seeking to "permanently stay" arbitration already commenced with the ADR Center, Petitioner avoids addressing whether arbitration instead should take place in New York, New York through any alternative arbitration agency. He does not suggest that the ICDR, or any other agency that could apply the UNICTRAL Rules, is the appropriate forum. Clearly, he would prefer to stay any and all arbitration in New York City, in contravention to the parties' agreement. See Lee Ex. A at § 10.d.

Moreover, none of Petitioner's contentions addresses, let alone refute, that the parties entered into an agreement to arbitrate, and that their dispute arises out of said agreement. Under the public policy of the Federal Arbitration Act and the Convention, the parties' dispute should be determined by arbitration.

E.      **The Demand for Arbitration Is Sufficient and Proper**

Petitioner asserts that Subway failed to notify Petitioner sufficiently as to the facts relevant to the parties' dispute.  However, on August 25, 2010, Subway served a Notice of Default on franchisees Petitioner and Smyth due to their failure to pay specified amounts of royalties and advertising fees (the "Notice of Default").  The Notice of Default specifies the Franchise Agreement provision that allows Subway to terminate that agreement if the franchisees fail to pay such monies due to Subway.  See Lee ¶ 17 and Ex. D.  Moreover, the Notice of Default states that the franchisees may cure their default by paying the delinquent amounts due for royalty and advertising within ten (10) days of their receipt of the notice.   However, neither Petitioner nor Smyth paid the amount owing to cure their default during the cure period and have not paid any of the weekly royalty or advertising fees that accrued since the service of the Notice of Default.  See Lee ¶¶ 20-21.

Thus, Petitioner's contention, that Subway failed to serve the franchisees with written notice specifying their defaults prior to filing a Demand for Arbitration with the ADR Center, is simply untrue.  See Petitioner's Memo at 7.  Even if, *arguendo*, the Demand for Arbitration did not provide the detail set forth in Subway's demand letter dated August 25, 2010, the demand letter provided sufficient notice to Petitioner.  See Lee Ex. D.

If New York state court cases were applicable in this court – despite the fact that the legal standard is set by the Federal Arbitration Act and the Convention – the cases that Petitioner cite are not applicable to the facts at hand.  In Bd. of Ed.  of Palmyra-Macedon Central School Dist. v. Palmyra-Macedon Faculty Assoc., 78 A.D.2d 765, 766, 433 N.Y.S.2d 643, 644 (4th Dep't 1980) and Nager Elec. V. Weisman Constr. Corp., 29 A.D.2d 939, 289 N.Y.S.2d 473 (1st Dep't

1968), the demands for arbitration apparently lacked the details that were set forth in Subway's demand letter to Petitioner.

In any event, courts have held that where a broadly worded notice of intention to arbitrate did not provide sufficient detail, the arbitration should only be stayed subject to granting leave to file a more detailed notice of intention to arbitrate.  See, e.g., Oneonta City School District, Appellant v. Oneonta Teachers Association, 59 A.D.2d 797, 798, 398 N.Y.S.2d 907 (3rd Dep't 1977); Bd. of Ed. of Newfane Central School District v. Newfane Teachers Assoc., 54 A.D.2d 1119, 1120, 388 N.Y.S.2d 789, 791 (4th Dep't 1976).  See also Bd. of Ed. of Cattarugus Central School v. Cattarugus Teacher's Assoc., 84 A.D.2d 685, 686, 447 N.Y.S.2d 51, 53-54 (4th Dep't 1981) (where respondent processed the grievance unhampered by the alleged lack of specificity in the demand for arbitration, stay of arbitration was reversed).  Thus, any purported lack of specificity in the Demand for Arbitration would be readily corrected.

In this way, given the indisputable fact that the parties entered into an agreement to arbitrate, and that their dispute arises out of said Franchise Agreement, the Federal Arbitration Act and the Convention dictate that the parties' dispute be subject to arbitration.

### F.    Subway, Rather Than Petitioner, Is Entitled to Attorneys' Fees and Expenses

Petitioner request for attorneys' fees and expenses in this case is entirely inappropriate. Petitioner bases such request entirely on the misguided notion that the case could not be arbitrated through the ADR Center but, as set forth above, the parties agreed to arbitration under the UNCITRAL rules through any arbitration agency, "such as" the IDRC, that applied such rules.  Thus, nothing in the Franchise Agreement requires payment of fees or expenses to Petitioner.

In contrast, Petitioner should pay Subway's attorneys' fees and expenses pursuant to the Franchise Agreement, which provides that if a party commences action in any court, except to compel arbitration, or except as specifically permitted under the Franchise Agreement, prior to an arbitrator's final decision, then that party is in default and the defaulting party will be responsible for all expenses incurred by the other party including lawyers' fees. See Lee Ex. A, ¶ 10(i).   As set forth above, Petitioner's petition to stay the arbitration proceeding is improper. Thus, the legal fees and expenses to defend this proceeding and this motion should be awarded to Subway pursuant to the Franchise Agreement.

## <u>CONCLUSION</u>

For the foregoing reasons, respondent Subway International, B.V., respectfully requests that the petition of petitioner Glenn P. Farrell be dismissed in its entirety, that respondent be granted the costs, including reasonable attorneys' fees, incurred in connection with these proceedings, and for any and all other relief that the Court deems just and appropriate.

Dated: New York, New York
      January 10, 2010

                      KAUFMAN & KAHN, LLP

                      Mark S. Kaufman
                            (Email:  kaufman@kaufmankahn.com)
                      Robert L. Kahn
                            (Email:  kahn@kaufmankahn.com)
                      747 Third Avenue, 32nd Floor
                      New York, NY  10017
                      (212) 293-5556

19