UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GLEN P. FARRELL,                                    :

                 Petitioner,     :

      -- against --                         :

SUBWAY INTERNATIONAL, B.V.,          :

                 Respondent.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No.

**DECLARATION OF
<u>DR. ERNST WALCH</u>**

**DR. ERNST WALCH,** Attorney-at-law of Vaduz, Liechtenstein, under penalties of perjury, declares as follows:

    1.    I am a licensed, practicing lawyer *(Rechtsanwalt)* in Liechtenstein, and make this affidavit in support of the response of petitioner Subway International, B.V. ("Subway"), to enforce Subway's agreement with respondent Glen Farrell ("Farrell") to arbitrate their dispute or controversy in New York.

**A.**    <u>**Qualifications to Opine Upon Liechtenstein Law**</u>

    2.    I am competent to opine upon the laws of Liechtenstein.

    3.    I hold a law degree of the University of Innsbruck, Austria (*Doctor iuris utriusque*, 1980) and the New York University School of Law (Master of Comparative Jurisprudence, 1981).

    4.    I am a certified translator and interpreter for German and English. I am and have been admitted to the New York Bar Association since 1983 and to the Liechtenstein Bar Association *(Liechtensteinische Rechtsanwaltskammer)* since 1984.

5.      I started my professional career with a New York law firm and also practiced several years in Liechtenstein before founding the Liechtenstein law firm Walch & Schurti in 1990/91.

6.      My law firm and I are top ranked in The Legal 500, Chambers Global and IFLR 1000, due *inter alia* to our expertise in the field of contract law.

7.      I have represented numerous Liechtenstein and international clients in disputes arising out of business contracts governed by Liechtenstein law.

8.      I have drafted contracts, general terms and conditions and standardized business contracts governed by Liechtenstein law for enterprises located in Liechtenstein and abroad.

9.      Liechtenstein contract law has constituted a significant area of my practice for over 20 years.

**B.      Under Liechtenstein Law, Agreements to Arbitrate Are Enforceable**

10.      I have been asked by Subway to address the following question from a Liechtenstein law perspective: Is the arbitration clause as provided for in Paragraph 10 of the Franchise Agreement dated August 20, 2008, concluded between Subway International B. V. as franchisor, and Glen P. Farrell and Jonathan 1. Smyth as franchisees (the "Franchise Agreement"), valid and enforceable under Liechtenstein law?

11.      For the purpose of my legal analysis below I have reviewed and considered the following documents which have been furnished to me by Subway:

  a.      The Franchise Agreement;

  b.      Franchise Agreement Republic of Ireland Rider concluded between Subway International B.V. as franchisor, and Glen P. Farrell and Jonathan I. Smyth as franchisees, dated August 20, 2008;

18.    The provisions of the Liechtenstein Civil Code which are similar to the respective provisions of the Austrian Civil Code are often construed in accordance with Austrian case law and Austrian legal writing by the Liechtenstein courts.

19.    However, as a matter of course, Liechtenstein courts are not bound by Austrian statutes or case law.

(2)    **German Law Is Not Precedential or Persuasive in Liechtenstein**

20.    The German Civil Code *(Bürgerliches Gesetzbuch)* became effective in the German Empire in 1900 (that is, 88 years after the enactment of the Austrian and the Liechtenstein Civil Code).

21.    Unlike the much older civil codes of Austria and Liechtenstein, the German Civil Code is based on the School of Pandectism. As a consequence, the German Civil Code differs considerably from the civil codes of Austria and Liechtenstein.

22.    Hence, German case law and German legal writing are seldom relied upon by the Liechtenstein courts when construing the provisions of the Liechtenstein Civil Code.

23.    Further, considerations of German courts on Liechtenstein law in general[1] and on the Liechtenstein Civil Code in particular are not considered to be precedents or persuasive authorities by the Liechtenstein courts.

24.    In the Semel Affirmation at Paragraph 28, Farrell's counsel alleges that "much of the law of Germany and Austria evolved together". This is only partly accurate. Some fields of German and Austrian law, in particular with regard to company law, evolved together. However,

---

[1] As a member state of the European Economic Area, Liechtenstein has to implement certain parts of the legislation of the European Union. In these harmonized areas of law German case law could be considered as persuasive authority. However, the areas of law decisive in the case at hand have not been harmonized.

as shown above, the Civil Code of Austria and the Civil Code of Germany did not evolve at the same time or in the same way.

25.     Hence, there is no reason to generally assume that German courts are familiar with the Austrian Civil Code, or with Liechtenstein law.

26.     The fact that German courts are not sufficiently familiar with Liechtenstein law is strikingly reflected by the two rulings of German courts on which Farrell relies in Farrell's Memorandum and in the Semel Affirmation.

27.     In both decisions, the German courts state that "the Austrian Civil Code applies in Liechtenstein." This statement is, as outlined above, factually incorrect.

28.     Further, the provision cited in these rulings is a provision of the Austrian Civil Code which is different from the respective provision in the Liechtenstein Civil Code.

29.     I respectfully submit that decisions of foreign courts whose judges are not even aware as to which statues and codes apply in Liechtenstein are not reliable or authoritative sources for interpreting Liechtenstein law.

### (3)    Freedom of Contract

30.     Freedom of contract is the underlying principle of Liechtenstein contract law and according to the Constitutional Court of Liechtenstein guaranteed by the Liechtenstein Constitution.[2]

31.     Pursuant to the principle of freedom of contract, the contracting parties are free to agree on the terms and conditions of a contract.

32.     The principle of freedom of contracts also applies with regard to pre-drafted standard terms and conditions.

---

[2] Constitutional Court, November 28, 2005, StGH 2004/34, LES 2007, 1 (attached hereto as Exhibit A).

33.    In order to protect the contracting counterparty of the party who uses pre-drafted standard terms and conditions, § 879 Subparagraph 3 of the Liechtenstein Civil Code restricts the freedom of contract under the circumstances described below.

### (4) Arbitration Clauses in Standard Terms and Conditions Are Enforceable

34.    § 879 Subparagraph 3 of the Liechtenstein Civil Code reads as follows:

> A contractual provision included in pre-drafted terms and conditions which does not stipulate one of the material duties that the parties are mutually obliged to perform, is in any case void, if such provision causes, when taking into account all facts of the particular case, a considerable disproportionateness of the contractual rights and obligations to the disadvantage of one party.[3]

35.    I am not aware of any published Liechtenstein case law which deals with or holds that an arbitration clause in pre-drafted standard terms and conditions is void under § 879 Subparagraph 3 of the Liechtenstein Civil Code, or under any other provision of Liechtenstein law.

36.    § 879 Subparagraph 3 of the Liechtenstein Civil Code is similar to § 879 Subparagraph 3 of the Austrian Civil Code. Hence, Austrian case law and legal writing can be referenced when interpreting § 879 Subparagraph 3 of the Liechtenstein Civil Code.

37.    Pursuant to Austrian case law and legal writing, § 879 Subparagraph 3 of the Austrian Civil Code applies to arbitration clauses provided in pre-drafted standard terms and conditions.[4]

---

[3] Original German text: *"Eine in* vo~formulierten *Geschaflsbedingungen enthaltene Klausel, die nicht eine der beidseitigen Hauptleistungenfestlegt, istjedenfalls nichtig. wenn sie, unter Beriicksichtigung aller Umstande des Falles, zum Nachteil eines Vertragsteils ein erhebliches Missverhaltnis der vertraglichen Rechte und Pjlichten verursacht."*
[4] Austrian Supreme Court, January 25, 1995,3 Ob *543/94* (attached hereto as Exhibit B); *Hausmaninger* in *FaschinglKonecni,* § 581 ZPO, recital 97 (attached hereto as Exhibit C).

38.    Such arbitration clauses are void under § 879 Subparagraph 3 of the Austrian Civil Code only if they "grossly disadvantage" the respective contractual counterparty. However, arbitration clauses in pre-drafted standard terms and conditions are not necessarily considered to be disadvantageous to the contracting counterparty.[5]

39.    An arbitration clause would be considered grossly disadvantageous if it leads to arbitral proceedings that will not adhere to the principles of a fair trial in terms of Article 6 of the European Convention on Human Rights.[6]

40.    Also, the choice of a certain arbitral forum can constitute a gross disadvantage, if such choice leads, in case arbitral proceedings are commenced, to a substantial financial burden on the contractual counterparty or to an improper restriction of the contractual counterparty's right to assert and/or defend its legal rights.[7]

### C.    The Franchise Agreement Is Not "Grossly Disadvantageous"

41.    Subparagraph 10.c. of the Franchise Agreement provides for arbitration proceedings in case of a dispute between Subway on the one hand, and Farrell and Jonathan J. Smyth on the other.

42.    For the purpose of this opinion I assume that the Franchise Agreement was drafted by legal advisors of Subway and that the vast majority of the terms and conditions set forth in the Franchise Agreement (in particular Paragraph 10 of the Franchise Agreement) were not negotiated individually between Subway on the one hand, and Farrell and Jonathan 1. Smyth on the other.

---

[5] *Koller* in *KenyrimlLeitnerlPernerlRiss,* Aktuelles AGB-Recht, 165 (attached hereto as Exhibit D).
[6] *Koller* in *KenyrimlLeitnerlPernerlRiss,* Aktuelles AGB-Recht, 167 (attached hereto as Exhibit E).
[7] *Koller* in *Kenyrim/Leitner/Perner/Riss,* Aktuelles AGB-Recht, 171 (attached hereto as Exhibit F).

43.    Based on this assumption, the Franchise Agreement can be categorized as a pre-drafted standard contract. Hence, § 879 Subparagraph 3 of the Liechtenstein Civil Code is applicable with regard to the arbitration clause as set forth in Paragraph 10 of the Franchise Agreement.

44.    As becomes apparent from the above, the arbitration clause at hand could be void under Liechtenstein law, but only if the arbitration clause lead to (i) an arbitral procedure which do not adhere to the principles of a fair trial, (ii) a substantial financial burden for Farrell, or (iii) an improper restriction of Farrell's right to assert and/or defend his rights against Subway.

(1)    **UNCITRAL Arbitration Rules Are Not Grossly Disadvantageous**

45.    Subparagraph 10.c. of the Franchise Agreement stipulates that

> [t]he arbitration will be held in accordance with the United Nations Commission on International Trade Regulations and Law (UNCITRAL) Arbitration Rules administered by an arbitration agency, such as the International Centre for Dispute Resolution, an affiliate of the American Arbitration Association.

46.    The UNCITRAL Arbitration Rules are internationally accepted.  Liechtenstein has even modelled its new Arbitration rules which became effective on November 1, 2010 according to the UNCITRAL Model Law on International Commercial Arbitration.

47.    Hence, as a matter of Liechtenstein law, arbitration proceedings conducted in accordance with the UNCITRAL Arbitration Rules are, of course, considered to be a fair trial.

48.    Further, arbitration proceedings held in accordance with the UNCITRAL Arbitration Rules do not improperly restrict the parties' rights to assert and/or defend their contractual rights.

49.    Therefore, from this perspective, the arbitration clause as set forth in Paragraph 10 of the Arbitration Agreement cannot be regarded as grossly disadvantageous.

-8-

### (2)    Arbitration in English Is Not Grossly Disadvantageous

50.    Pursuant to Subparagraph 10.c. of the Franchise Agreement the arbitration shall be conducted in English. English is the official language of Ireland, the jurisdiction in which Farrell is resident. Therefore, there is no language barrier which could restrict Farrell's right to assert and or defend his contractual rights against Subway.

51.    As a consequence, from this additional perspective, the arbitration clause as set forth in Paragraph 10 of the Franchise Agreement is not grossly disadvantageous.

### (3)    Arbitration in New York Is Not Grossly Disadvantageous

52.    Subparagraph 10.d. of the Franchise Agreement provides that "New York, New York, USA shall be the site of all arbitration hearings".

53.    Upon information and belief, Farrell is resident in the Republic of Ireland. Subway is a company incorporated under the laws of the Netherlands with its seat in Amsterdam, Netherlands.

54.    As outlined above, the choice of New York as the hearing venue would only be void under Liechtenstein law if New York as a hearing venue was a gross disadvantage from Farrell's perspective. The latter is, as demonstrated below, clearly not the case.

55.    As a practical matter, the choice of New York as a venue for the arbitration hearing means that Farrell has to communicate with a New York lawyer instead of a Dublin or Amsterdam lawyer to represent him, *inter alia,* at the arbitral hearing.

56.    There can be no reasonable doubt that New York is a well developed jurisdiction with a sufficient number of well qualified professionals practicing there.

57.    From this perspective the choice of New York as the hearing venue does not improperly restrict or complicate Farrell's right to assert and/or defend his rights against Subway.

-9-

58.    In this context it must also be noted that there will be no language barrier to overcome for Farrell when instructing a New York lawyer.

59.    Therefore, the fact that Farrell might have to instruct a lawyer in New York instead of a lawyer in Dublin or in Amsterdam cannot be considered as a gross disadvantage.

60.    Under the UNCITRAL Arbitration Rules, a litigant is not required to appear in person before the tribunal.

61.    However, even if Farrell wished to personally attend the arbitral hearing, he could do so without facing major difficulties. New York is very well connected to the rest of the world in general and to the Republic of Ireland in particular. For a business person a trip from the Republic of Ireland to New York cannot be considered exceptionally burdensome.

62.    To the best of my knowledge, travel expenses from the Republic of Ireland to New York are not substantially higher than travel expenses from the Republic of Ireland to a continental European city (such as Amsterdam, the principal place of business of Subway).

63.    Indeed, the documents Farrell filed with the New York State court indicate that on November IS, 2010, Farrell verified and had notarized a Verified Petition for a Stay of Arbitration in Bratislava, Slovakia.

64.    Thus, Farrell appears to be able to afford, and otherwise capable of, travelling outside of the Republic of Ireland.

65.    From this perspective the choice of New York as the hearing venue does not improperly restrict or complicate Farrell's right to assert and/or defend his rights against Subway.

66.    Hence, the fact that Farrell would have to travel to New York (if Farrell wishes to attend the arbitral hearing personally) cannot be considered a gross disadvantage.

67.     When assessing whether the choice of New York as the hearing venue constitutes a "substantial financial burden" for Farrell, one has to compare the procedural costs that would arise in case of a hearing in New York with the costs that would arise in case of a hearing in Amsterdam or Dublin.

68.     As to this factor, the choice of forum as set forth in Subparagraph 10.d. of the Franchise Agreement would only be grossly disadvantageous if arbitration in New York caused substantially higher procedural costs than arbitration in Amsterdam or Dublin.

69.     As previously stated, Farrell is not required by UNICITRAL arbitration rules to travel to New York.  However, even if Farrell wished personally to attend the arbitral hearing, such attendance would not constitute a substantial financial burden.

70.     I cannot assume that the fees all for legal professionals practicing in New York are substantially higher than the fees of legal professionals practicing in Dublin or Amsterdam. Hence, Farrell has not established that New York as a trial venue would lead to procedural costs that would substantially exceed the procedural costs that would arise if he arbitrated the case in Amsterdam or Dublin instead.

**Conclusion**

71.    As a result of the foregoing, as a matter of Liechtenstein law, the Arbitration

Clause as set forth in Paragraph 10 of the Franchise Agreement is valid and enforceable.


I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.


Executed in Vaduz, Liechtenstein
This seventh day of January, 2010

_____
Dr. Ernst Walch

-12-