UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*In the Matter of the Application of*

GLEN P. FARRELL,

                       Petitioner

*for Judgment Pursuant to CPLR 7503(b)
Staying the Arbitration Sought by*

SUBWAY INTERNATIONAL B.V.,
a Netherlands corporation,

                       Respondent.

Civil Action No:
11 CIV 0008 (JFK)

**REPLY DECLARAION OF
BENJAMIN K. SEMEL
IN SUPPORT OF
THE PETITION
TO STAY ARBITRATION**

BENJAMIN K. SEMEL hereby affirms the following under penalty of perjury:

1. I am an attorney duly admitted to practice before this Court and the courts of the State of New York, with the law firm of Pryor Cashman LLP, attorneys for the Petitioner in this action. As such, I am familiar with the facts and circumstances of this action, part of such knowledge having been obtained from an examination of the file and documents relating to this case. I respectfully submit this declaration in further support of the Petition to stay an arbitration proceeding filed by Respondent with the American Dispute Resolution Center ("ADRC").

2. Respondent's strategy in opposing the Petition focuses on distraction from the issues. The Petition has two parts: (i) the impropriety of ADRC in presiding over the arbitration; and (ii) the invalidity of New York as a forum under the governing Liechtenstein law. On the first issue, the sheer obviousness of Respondent's breach has left it in a tough position. As a result, it has chosen to repeat over and over an untenable and strange reading of the Agreement,

apparently in hopes of beating the reader into submission.  On the second issue, Respondent actually submitted a useful declaration from a Liechtenstein attorney.  The Walch Declaration confirms the points of law averred by Petitioner, making the invalidity of the New York forum clause an inescapable conclusion.   Respondent understandably does not focus on this part of the Walch Declaration, but instead loads its papers with vitriol against the two German appellate court decisions submitted by Petitioner.  Respondent shouts about xenophobia, anti-Americanism and the supremacy of Dr. Walch over German courts – but in the end, both authorities state the law of Liechtenstein in the same way.  Given the merit of the Petition, reinforced by Respondent's failure to refute the arguments in the moving papers, Petitioner respectfully submits that it should be granted in its entirety.

      3.      In addition to the stay, Section 10(i) of the Agreement mandates that attorneys' fees and expenses be awarded to Petitioner.  Petitioner has taken on sizable expenses and risk in confronting Respondent on its parent's home turf.  The German decisions indicate franchisees do not take this risk, allowing for Subway/ADRC default judgments.  Petitioner took up the challenge, but in doing so has been forced to expend significant resources against this improper system of arbitration with ADRC in breach of the Agreement.  A full award of fees and expenses is not only just, but is the only way that Respondent does not effectively benefit from its breach.

**<u>Respondent's Reading Of The Arbitration Provision Is Untenable</u>**

      4.      As discussed in the moving affidavit ("Semel Aff.") and the moving and reply memoranda of law, the arbitration provision invokes the UNCITRAL Arbitration Rules (the "Rules"), which require agreement between the parties on the choice of an arbitrator or "appointing authority" to choose arbitrators.  If agreement cannot be reached, the Permanent

Court of Arbitration at the Hague chooses an appointing authority which in turn chooses arbitrators.

5.  The Rules process is not difficult, and it is used in countless arbitration provisions.  As to be expected, the Rules were recommended by the General Assembly of the United Nations, and are among the most widely used in international arbitration.  Respondent's repeated claims that somehow it will be unable to have an arbitration without ADRC is nonsense.  Petitioner is also seeking arbitration, merely in the appropriate forum.

6.  Since a requirement of agreement on the agency cannot be disputed, Respondent is left to argue that agreement has been reached on ADRC as an arbitration agency.  This would seem an impossible argument since ADRC is not mentioned in the Agreement and Petitioner explicitly rejected ADRC (Semel Aff., Ex. F).  Respondent tries to argue that the words "such as the International Centre for Dispute Resolution ['ICDR'], an affiliate of the American Arbitration Association ['AAA']" includes ADRC.  But ADRC is not an affiliate of the AAA.  No, Respondent argues, the clause "such as the ICDR, an affiliate of the AAA" really just means *any* agency, regardless of affiliation with the AAA.  Opp. Br., p. 13.  Then, having reached the apex of absurd reasoning, Respondent repeats this mantra over and over again.  Lee Decl., ¶26, 27; Opp. Br., 15, 16, 18.

7.  A brief analysis of the steep and slippery slope of Respondent's argument shows its fatal flaws.  Under Respondent's reasoning, anyone in the world who is "capable of and willing to use the UNCITRAL rules" has been agreed upon by the parties.  Opp. Br., p.13.  Under this reasoning Petitioner could with impunity appoint his favorite soccer goalie to be the appointing authority.  (The Rules specifically state that an appointing authority can be an individual or an entity.)  Since under the Rules, this goalie would have discretion to appoint a

sole arbitrator without any input from the parties (Article 6(3)), he could choose himself as arbitrator and no one can object (so long as he is willing to use the Rules).  This is of course ludicrous.  No party would expose itself to such a capricious process.  Respondent's counsel and Ms. Lee offer unpersuasive conjecture to explain away the illogic, surmising that the parties did this because ICDR "might dissolve or otherwise stop engaging in arbitrations, and the parties... did not want any such dissolution to bar their arbitration of disputes with another arbitration agency."  Opp. Br., p. 13; Lee Decl., ¶26.  But this retrofit explanation is glaringly off target.  As discussed above, using the Rules does not obstruct arbitration.  They are the gold standard for international contracts, propagated by the United Nations and used throughout the world.  The Rules say simply: Find agreement or petition the PCA.  There is no reason, let alone need, to allow another party unilateral choice among anyone in the world to preside over the arbitration.  Given the mutual choice requirement of Article 6 of the Rules, as well as the Agreement's reference to agencies "such as the ICDR, an affiliate of the AAA," it is untenable to argue that Respondent can unilaterally pick ADRC and force that decision on Petitioner.

8.      As an aside, even if Respondent's distressed rewriting of the Agreement applied, ADRC would still not be allowed because ADRC has shown itself not "capable of and willing to use the UNCITRAL rules."  Most obviously, ADRC has ordered a schedule of submissions that violates the Rules, and does so in a way that is awfully prejudicial to Petitioner.  Article 19 of the Rules states that Petitioner's Statement of Defence would be submitted in "reply to the particulars (b), (c) and (d) of the statement of claim" submitted by Respondent,.  However, ADRC has scheduled both of them to be due *on the very same date*.  (Semel Aff. at Ex. G.)  Plainly, Petitioner cannot respond to a statement of claim that has not yet been submitted, and so these dates are not in keeping with the Rules (not to mention being downright inappropriate).

This is not a trivial issue.  ADRC has directed that the arbitrator may issue a final decision after receiving the initial submissions.

9.Moreover, despite claims made in the Lee Declaration that this is a simple case, the facts are that both Petitioner and Respondent have a wide array of claims and defenses that they have asserted against each other, and the scope of this arbitration is hardly clear or narrow.  The fact that ADRC is requiring Petitioner to defend in total blindness to the claims (there has been no description of claim submitted in the ADRC case beyond the seven-word claim that "the franchisees have breached their franchise agreement") evidences its true disregard for the letter and spirit of the Rules.  (Id. at Exs. A, G.)

10.ADRC has also flaunted the impartiality Rules which state that the agency "shall have regard to such considerations as are likely to secure the appointment of an independent and impartial arbitrator and shall take into account as well the advisability of appointing an arbitrator of a nationality other than the parties," (Article 6(4)).  ADRC offered a panel of five "neutrals."  All but one – and Respondent is allowed one peremptory strike – are located within an hour of Subway's parent company, whose legal team provides the legal services for Respondent.  Either ADRC has no arbitrators that are more distanced from Respondent, in which case it is "incapable" of using the Rules (which are designed for international matters), or else ADRC decided not to offer its more neutral candidates, in which case it is "unwilling" to use the Rules.  Either way, even under the preposterous interpretation of Respondent, ADCR is not legitimate.  For all of the above reasons, and in accord with the FAA, 9 USCS §5, the Court should stay the arbitration ADRC is purporting to conduct.

**The Choice Of New York As Forum Is Void Under The Agreed Liechtenstein Law**

11.     As discussed in the accompanying Reply Mem., pp. 7-9, Respondent's opposition papers confirm all of the Liechtenstein law set forth by Petitioner, and hence Petitioner agrees with Dr. Walch on his explication of Liechtenstein law (while disagreeing with his application of the law to the facts in this case, about which Dr. Walch has no personal knowledge and appears to be not well informed).  Looking beyond the rhetoric of Respondent, which offers more heat than light, there is little in dispute.  Dr. Walch makes clear that under Liechtenstein law, the choice of New York as forum is **void** if arbitration in New York would grossly disadvantage Petitioner.  (Walch Decl., ¶54.) He also confirms that gross disadvantage exists in such a simple situation as where "the distance of the venue bears material financial costs or complicates the costs of bringing an action."  (Id. at Ex. F)  This may not be the law of New York, but all parties agree that this is the law of Liechtenstein – a law expressly chosen by Respondent.  The Agreement states that that the choice of Liechtenstein law was made to "accomplish [the] goal" of Respondent's affiliate (a Liechtenstein corporation).  (Semel Aff, Ex. B at §13.)  It cannot now complain about that law.

12.     Ms. Lee argues that Petitioner is not disadvantaged because "this proceeding" shows that Petitioner can effectively litigate in New York.  (Lee Decl., ¶49.)  Such an argument is an unacceptable Catch 22.  Under this reasoning, there is no way for Petitioner to succeed.  Respondent would have it that if Petitioner prevails, he should not prevail because he is then not at a disadvantage.  It is faulty logic.  Petitioner does not have to be hopeless to be grossly disadvantaged.  Whether the merits of his claims might still shine through, or whether he might obtain relief despite his disadvantage, does not take away from the fact that he is grossly disadvantaged.  He is away from the one forum where all of the witnesses, evidence, property,

operations and history of the dispute resides. In contrast, Respondent cannot claim disadvantage in the obvious Dublin forum. To be sure, Respondent loses out on an advantage, but this advantage is illegitimate to begin with: the advantage of hauling franchisees across the world to the backyard of its parent company where none of the evidence resides, into a summary proceeding where the franchisee must file an answer on the same day the statement of claim is served, before an arbitration agency that thumbs its nose at the Rules. The only true gross disadvantage in this case lies with Petitioner.

13.     Likewise, Respondent's arguments that Petitioner is "sophisticated" and therefore not disadvantaged are not persuasive. As the law set forth by Dr. Walch and the German courts explains, "grossly disadvantaged" does not mean that a party must be indigent or a simpleton. Respondent also fixates on the idea that Petitioner travels between Slovakia and Ireland, which is somehow supposed to make him incapable of being disadvantaged. His European travel does not bear on whether he is disadvantaged by a proceeding in New York.[1] If Respondent proposes an arbitration in Slovakia, such a fact might be relevant, although even then the dispositive facts would likely be that all of the witnesses, evidence, property and operations reside in Ireland, making it very difficult to put on a case anywhere else. (Reply Mem., pp. 8-9, fn. 5). Respondent's efforts to trap Petitioner in a no-win situation, where any evidence of capacity or success makes him ineligible for the protection of the law, must not obtain. Respondent is surely accustomed to its system of obtaining default judgments against foreign franchisees that lack the will, spirit or wherewithal to come overseas and challenge its illegitimate proceedings in Connecticut. However that history is not the law. A franchisee that (at great personal expense

---

[1] Moreover, this travel is hardly a sign of endless resources. A quick check at <ryanair.com> reveals that flights from Dublin to Bratislava commonly have a base price of 30 Euros, about the price of a taxi from the airport in New York.

and effort) does assert his rights must not be barred by his own resourcefulness from showing the gross disadvantage brought by Respondent's skewed proceeding.

**Attorneys' Fees Are Mandated And A Necessary Part of Petitioner's Relief**

14. While a stay of the arbitration would be a form of success for Petitioner, without a full award of attorneys' fees and expenses, Respondent will have accomplished its goal of bullying Petitioner with its breach of the Agreement.

15. The Agreement awards all expenses and attorneys' fees in this situation: "If a party… commences any arbitration… in any forum except where permitted under this Paragraph 10" or "if party defaults under any other provision of this Paragraph 10," the "[t]he defaulting party will be responsible for all expenses incurred by the other party… including lawyers fees and will be liable for abuse of process." (Semel Aff., Ex. B, §10(i)).

16. With its breach, Respondent used minimal effort to force a substantial outlay by Petitioner to assert his rights under the Agreement. The legal team for Respondent's parent company, located less than an hour from ADRC, filed a bare bones demand form that takes only a few minutes to complete and which provides no details of claims against Petitioner (Semel Aff., Ex. A). Petitioner advised Respondent that this unilateral choice of ADRC was not allowed by the Agreement. (Semel Aff., Ex. F.) Rather than withdraw the Petition and re-file in an appropriate forum, Respondent chose to move ahead and force Petitioner to either default (as most foreign franchisees appear to do) or obtain overseas counsel and file this Petition, litigating in state and federal courts on another continent in an effort to stop the improper proceeding. Respondent should not be rewarded, and Section 10(i) of the Agreement calling for full fees and expenses should be enforced.

17. For all of the foregoing, and the facts and law in the accompanying memorandum and the moving papers, it is respectfully requested that the court grant the Petition in its entirety, staying the ADRC arbitration and arbitration under the void New York forum clause, and awarding Petitioner's attorneys' fees and expenses pursuant to the Agreement.

Dated: New York, New York
February 4, 2011

/s/ *Benjamin K. Semel*
BENJAMIN K. SEMEL