UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In the Matter of the Application of*<br><br>GLEN P. FARRELL,<br><br>                              Petitioner<br><br>*for Judgment Pursuant to NY CPLR 7503(b)*<br>*Staying the Arbitration Sought by*<br><br>SUBWAY INTERNATIONAL B.V.,<br>a Netherlands corporation,<br><br>                              Respondent. | Civil Action No:<br>11 CIV 0008 (JFK) |

**PETITIONER'S REPLY MEMORANDUM OF LAW**

<u>**IN SUPPORT OF THE PETITION TO STAY ARBITRATION**</u>

Benjamin K. Semel
PRYOR CASHMAN LLP
7 Times Square
New York, New York  10036
(212) 421-4100
*Attorneys for Petitioner*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS ......................................................................................................2

ARGUMENT ............................................................................................................................2

   I.  ADRC IS AN UNAUTHORIZED AGENCY,
       AND ITS ARBITRATION SHOULD BE STAYED ............................................................2

      A.  The Legitimacy of the Arbitration Agency Is An Issue For The Court To Decide ...........2

      B.  The Agreement Does Not Allow For Respondent's Unilateral Choice Of ADRC ...........4

  II.  THE NEW YORK FORUM CLAUSE IS VOID UNDER THE UNDISPUTED LAW ........6

CONCLUSION ........................................................................................................................10

## **TABLE OF AUTHORITIES**

**CASES** **PAGE(s)**

Avis Rent A Car System, Inc. v. Garage Employees Union, Local 272,
    791 F.2d 22 (2d Cir. 1986) ....................................................................................... 3, 4

Bear Stearns & Co. v. N.H. Karol & Assoc., Ltd.,
    728 F. Supp. 499 (N.D. Ill. 1989) ................................................................................. 3

Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.,
    403 F.3d 85 (2d Cir. 2005) ............................................................................................ 3

Energy Transport, Ltd. v. M.V. San Sebastian,
    348 F. Supp. 2d 186 (S.D.N.Y .2004) ........................................................................... 5

Lawler Mfg. Co. v. Bradley Corp.,
    280 Fed. Appx. 951 (Fed. Cir. 2008) ............................................................................ 6

Mediterranean Golf, Inc. v. Hirsch,
    783 F. Supp. 835 (D.N.J. 1991) .................................................................................... 8

SEIU, Local 32BJ v. Coby Grand Concourse, LLC,
    04 Civ. 9580 (CSH), 2006 U.S. Dist. LEXIS 11417 (S.D.N.Y. Mar. 16, 2006) ........... 3

Stop & Shop Supermarket Co. v. United Food & Commer. Workers' Union Local 342,
    AFL-CIO, 06 Civ. 3201 (LBS), 2006 U.S. Dist. LEXIS 25073
    (S.D.N.Y. May 1, 2006), aff'd, 246 Fed. Appx. 7 (2d Cir. 2007) ................................. 3

Waterspring, S.A. v. Trans Marketing Houston, Inc.,
    717 F. Supp. 181 (S.D.N.Y. 1989) ............................................................................... 4

**STATUTES**

9 U.S.C.S. § 5 ................................................................................................................... 2

**PRELIMINARY STATEMENT**

The Petition in this case is essentially two-pronged.  The first prong deals with the unilateral appointment of the arbitration agency American Dispute Resolution Center ("ADRC") in blatant violation of the written franchise agreement (the "Agreement").  Even on its face, this is a straightforward issue.  The requirement that the agency be agreed upon (or else be chosen by the Permanent Court of Arbitration at the Hague) is undisputed.  The violation of this requirement is clear from the lack of any reference to ADRC in the Agreement, combined with the explicit written rejection of ADRC by Petitioner.  Respondent's response is a "hail Mary" argument that the parties really "agreed" on *every* agency.  In truly tortured reasoning, Respondent argues that *anyone in the world* was "agreed upon" to preside over the arbitration, which naturally includes ADRC.  There is no precedent for such a counter-intuitive reading, and the argument does not get any better on closer inspection.  As there are no legal restrictions on who can be an arbitration agency (the term in the governing UNCITRAL Rules (the "Rules") is "appointing authority"), Respondent's reading allows a party to choose its garage mechanics to preside over the arbitration.  To add to the absurdity, Respondent argues that the mechanics are authorized to rule upon their own jurisdiction, and such ruling is not subject to review by the Court.  The case law cited below shows how far out of line with legal reality this argument stands.  In the end, the clear language of the Agreement and Rules requiring mutual choice should control, and the ADRC proceeding should be stayed.

The second prong of the Petition is on its face more complex.  It involves the effect of the governing Liechtenstein law on the selection of New York as a forum, where the dispute has no nexus whatsoever with New York and it disadvantages one party.  Petitioner submitted recent, published German appellate court decisions dealing with the exact Subway forum clause at issue here.  Respondent complains loudly about these decisions.  However, the Declaration of Ernst Walch submitted by Respondent belies these howls.  Dr. Walch confirms *every single one* of the relevant points of Liechtenstein law that are found in the German decisions, and offers further

legal authority confirming that the forum clause is void (not just voidable) under the facts of this case. Because the law is proffered by Respondent itself and confirmed in court decisions offered by Petitioner, the law is undisputed and a simple application of the undisputed facts - namely that all the witnesses, evidence, property and business operations in dispute are located in Dublin, Ireland, and neither party is an American citizen – makes it clear that the forum choice of New York is void under Liechtenstein law.

Petitioner wishes to emphasize that he is not seeking to avoid arbitration. Though Respondent tries to self-identify as the champion of the contract and of arbitration, in this case Petitioner seeks to enforce the arbitration clause, while Respondent seeks to evade its requirements of a mutually-chosen arbitration agency. With regard to the change of forum, Petitioner only gives effect to the contract law chosen by Respondent for its own form franchise contract. The forum clause is not just voidable, it is *void* under the law of Liechtenstein. This merely brings back fairness and puts the parties in the position of arbitrating in the forum that has a nexus with the dispute rather than an unconnected, remote forum dominated by Respondent's parent company. Respondent cannot now complain of the effects of the law that it chose, nor that the fairness protections of this law are stronger than in some other jurisdictions.

## STATEMENT OF FACTS

See the accompanying Reply Declaration of Benjamin K. Semel ("Reply Decl."), as well as the Verified Petition and moving Affidavit ("Semel Aff.") and its exhibits for a recitation and discussion of relevant facts.

## ARGUMENT

I. **ADRC IS AN UNAUTHORIZED AGENCY, AND ITS ARBITRATION SHOULD BE STAYED**

    A. **The Legitimacy of the Arbitration Agency Is An Issue For The Court To Decide**

Respondent devotes much space in its papers to the Federal Arbitration Act, and yet fails to cite Section 5, which states: "If in the agreement provision be made for a method of naming or

appointing an arbitrator or arbitrators or an umpire, such method *shall be followed*." 9 U.S.C.S. § 5 (emphasis added). The case law is clear that when a dispute arises under this provision, it is for the Court to step in and decide the issue. As this Court held in Stop & Shop Supermarket Co. v. United Food & Commer. Workers' Union Local 342, AFL-CIO, 06 Civ. 3201 (LBS), 2006 U.S. Dist. LEXIS 25073, at *7 (S.D.N.Y. May 1, 2006), aff'd, 246 Fed. Appx. 7 (2d Cir. 2007):

> Here, a method of the arbitration (the selection of appropriate arbitrators) is called into question and the Court undertakes its duty under [9 USCS] § 5 to correct the failure of a party to avail itself of the proper method. It would be contrary to [9 USCS] § 5 to submit to the arbitrator in question the appropriateness of his selection. See Bethlehem Mines Corp. v. United Mine Workers, 344 F. Supp. 1161, 1165 (W.D. Pa. 1972) ("We find no basis for compelling the plaintiff to submit the very question at issue to the individual over whom the dispute centers.").

This common sense rule is followed in federal courts throughout the country:

> The issue of whether a grievance is before a proper arbitration forum is appropriate for judicial resolution. Because the arbitrator has no power beyond the agreement of the parties, an arbitrator who is improperly elected has no power to resolve a dispute between the parties. Similarly, because an arbitrator can not be the judge of his own authority [citation omitted] a challenge to his jurisdiction over a dispute may be heard in the judicial system.

Bear Stearns & Co. v. N.H. Karol & Assoc., Ltd., 728 F. Supp. 499, 501 (N.D. Ill. 1989).

Indeed the cases are legion in which federal courts are called upon when an arbitrator is improperly chosen by one party in violation of the contract's terms. See SEIU, Local 32BJ v. Coby Grand Concourse, LLC, 04 Civ. 9580 (CSH), 2006 U.S. Dist. LEXIS 11417, at *14-16 (S.D.N.Y. Mar. 16, 2006) (arbitration not upheld because "the unilaterally selected arbitrator in this case was chosen in complete contravention of the arbitration provision…"); Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 91-92 (2d Cir. 2005) (arbitration not upheld because "the appointment of a third arbitrator was premature, and, therefore, the composition of the arbitral authority was not in accordance with the parties' agreement. See New York Convention Art. V(1)(d)."); Avis Rent A Car Sys., Inc. v. Garage Employees Union, Local 272, 791 F.2d 22, 25 (2d Cir. 1986) (arbitration not upheld where "the AAA rules adopted by the

3

Avis Agreement provided for an arbitrator picked by the parties from an AAA-prepared list. Instead, the arbitrator was appointed by the Mediation Board from a list of its own. This created a method for settling disputes... significantly different from that contemplated by that contract."). This Court has gone so far as to say that "[i]t is axiomatic that an [arbitration] award will not be enforced if the arbitrators are not chosen in accordance with the method agreed to by the parties." Waterspring, S.A. v. Trans Marketing Houston, Inc., 717 F. Supp. 181, 186 (S.D.N.Y. 1989) (citing Avis, 791 F.2d at 25).[1]

### B.  The Agreement Does Not Allow For Respondent's Unilateral Choice Of ADRC

The Agreement states that :

> Arbitration will be held in accordance with the [UNCITRAL] Arbitration Rules, administered by an arbitration agency, such as the International Centre for Dispute Resolution, an affiliate of the American Arbitration Association.
> (Semel Aff. at Ex. B, §10)

This provision can be broken down into three parts, each separated by commas:

- **"Arbitration will be held in accordance with the [UNCITRAL] Arbitration Rules":** Article 6 of the Rules governs the choosing of arbitrators. (Semel Aff. at Ex. C)

- **"administered by an arbitration agency":**  Article 6 of the Rules offers two routes for choosing an arbitrator: (i) the parties seek agreement on specific arbitrators (Art. 6(1)(a)); or (ii) the parties seek agreement on an "appointing authority" (that would in turn choose arbitrators) (Art. 6(1)(b)).  In either case, if no agreement is reached, the Permanent Court of Arbitration ("PCA") at the Hague designates an agency (Art. 6(2)). This phrase, "administered by an arbitration agency," calls for using the latter method of proposing an agency rather than going to arbitrators directly.

- **"such as the International Centre for Dispute Resolution, an affiliate of the American Arbitration Association."** ("ICDR"):  this phrase might be seen in two ways: as offering an example or as limiting the field of choice to ICDR.  Markedly,

---

[1] Curiously, Respondent makes numerous mentions in its brief of the standards for reviewing a motion to compel arbitration, in which the court is asked to determine if the dispute is covered by the agreement.  This is not a motion to compel.  Presumably, if a court were to order arbitration via a motion to compel, it would order arbitration pursuant to the rules of the agreement.  That is the problem in this case.  Respondent has not followed the provisions of the Agreement for choosing the arbitrator, and Section 5 of the FAA makes it clear that the courts are not just empowered, but mandated to step in and correct the violation.

4

> *neither of these interpretations allows for ADRC as a unilateral choice*. Nothing in this phrase removes the requirement for agreement among the parties pursuant to Article 6. At most, the phrase can be read to imply that there is constructive agreement on ICDR by limiting the field of acceptable agencies to only ICDR.[2]

Respondent instead argues for a wildly inappropriate reading. Although ADRC is nowhere mentioned in the Agreement, Respondent argues that "such as ICDR" means that ADRC has been agreed to. Opp. Br., 13, 15, 18. This goes far beyond the idea that ICDR is listed only as an example. Again, even if ICDR were an example, that would not remove the requirements of Article 6 of the Rules whereby the parties must *agree* on the agency (or submit it to the PCA). Thus Respondent is left to argue that the phrase "such as ICDR" should be interpreted to mean "the parties hereby agree on ADRC." This is as preposterous as it looks. Again and again throughout its papers, as if trying to bludgeon the idea through, Respondent keeps saying that the parties have "agreed" on ADRC - with the words "such as ICDR." But Respondent does not offer a single factor that makes ADRC "such as ICDR." Rather, Respondent says that "such as ICDR" means "capable of and willing to use the UNCITRAL rules." Opp.Br., p.13. Where does this bizarre definition come from? It is not in the Agreement. Indeed, the UNCITRAL Rules have nothing to do with ICDR. The Agreement says "such as the [ICDR], *an affiliate of the American Arbitration Association*." Given the inclusion of the descriptive "an affiliate of the American Arbitration Association," this would appear to be the qualifier for "such as ICDR." As Respondent highlights in its brief, "courts should avoid an interpretation that makes a contractual provision superfluous." Energy Transp., Ltd. v. M.V. San Sebastian, 348 F. Supp. 2d 186, 203 (S.D.N.Y .2004) Unless the "affiliate of the AAA" clause describes what to look for in determining who is "such as ICDR," then it is utterly superfluous. Moreover, Respondent's idea that a clause like "such as ICDR" includes *everyone* was rejected in a similar context in Lawler Mfg. Co. v. Bradley Corp., 280 Fed. Appx. 951, 954-955 (Fed. Cir.

---

[2] Given the fact that ICDR is the largest international commercial arbitral institution in the world, with operations and arbitrators in the U.S., Ireland and most countries, this distinction would seem almost academic, as it is hard to see why either party would object to ICDR.

5

2008).  The Circuit Court looked at a contract phrase stating, "[i]f a Licensed Unit is invoiced or shipped in combination in another product **such as** an emergency shower or eyewash" (Id. at 952; emphasis added) then a different (and lower) royalty rate applied.  The defendant – like Respondent here - argued that the words "such as" meant that what followed was an unrestrictive example and the clause really included all products.  The court rejected this, holding that: "If all combinations of products [were included in the phrase]… there would be no need to list specific examples of included combinations… Thus, an interpretation that the "such as" clause merely provides examples… is an interpretation that renders that phrase superfluous. Such an interpretation is in direct conflict with Indiana law, which requires that all contract terms have effect." Id. at 954-55.  Contract interpretation in Indiana, as in New York, is in keeping with common sense.  If the parties meant to agree on *any* arbitration agency that applied UNCITRAL Rules, why would they say "such as ICDR"?  The unilateral choice of ADRC is illegitimate under any reasonable interpretation of the Agreement.

Indeed, Respondent's interpretation is so specious that a serious analysis gives it too much credit.  The true interpretation is that Respondent is well aware that ADRC is not allowed by the Agreement.  There was no mistaken contract reading here.  It is simply more expedient for Respondent to use an agency that is looser with its rules and more favorable with its arbitrator selections.  Respondent has likely learned that foreign franchisees cannot afford to come into New York and go through these types of proceedings to challenge ADRC, and thus Respondent achieves default judgments.  Both of the German cases cited in the moving papers (Semel Aff., Ex. K at Exs. 1 and 2) involved default judgments granted to Respondent by ADRC against a foreign franchisee.  It is time that Respondent had an arbitration that did not breach the Agreement; the ADRC proceedings should be stayed.

**II.    THE NEW YORK FORUM CLAUSE IS VOID UNDER THE UNDISPUTED LAW**

Determining an issue of Liechtenstein law is not as straightforward as reading the Agreement and Rules, but the papers before the Court make it easier.  In his moving papers,

Petitioner provided the Court with two German appellate court decisions dealing with the precise clause at issue here – the Subway international franchisee forum clause.  Respondent does not dispute that the contracts in the German cases are identical to the Agreement.  The moving brief (p. 5) gives precedent for the Court exercising discretion to apply collateral estoppel and prevent relitigation of these issues.  Respondent does not comment on or refute this case law.  Beyond collateral estoppel, the German decisions are simply persuasive authority.[3]  Although Respondent attacks the German decisions vehemently, looking past its empty rhetoric reveals that Dr. Walch confirms each point of law.  (This is to be expected, as the German judges are reading and ruling on laws written in German, and despite Respondent's attacks on them as xenophobic and anti-American, German decisions are often accorded respect and deference in American courts.)

The law that Dr. Walch confirms – all of which is undisputed by Petitioner – is:

- "Section 879(3) of the Liechtenstein Civil Code is similar to §879(3) of the Austrian Civil Code.  Hence, Austrian case law and legal writing can be referenced when interpreting 879(3) of the Liechtenstein Civil Code." (Walch Decl., ¶36)

- "Pursuant to Austrian case law and legal writing, §879(3) of the Austrian Civil Code applies to arbitration clauses provided in pre-drafted standard terms and conditions." (Id. at ¶37)

- "the Franchise Agreement can be categorized as a pre-drafted standard contract.  Hence §879(3) of the Liechtenstein Civil Code is applicable with regard to the arbitration clause as set forth in Paragraph 10 of the Franchise Agreement." (Id. at ¶43)

- "arbitration clauses are void under §879(3) of the Austrian Civil Code... if they 'grossly disadvantage' the respective contractual counterparty." (Id. at ¶38)

- "the choice of New York as the hearing venue would... be void under Liechtenstein law if New York as a hearing venue was a gross disadvantage *from Farrell's perspective*." (emphasis added) (Id. at ¶54)

- "the choice of forum... [in] the Franchise Agreement would… be grossly disadvantageous if arbitration in New York caused substantially higher procedural costs than arbitration in Amsterdam or Dublin." (Id. at ¶68)

---

[3] Due to the scarcity of Subway restaurants in Liechtenstein or Austria, German courts are likely the most experienced and authoritative that will ever rule on this precise contract, and their ruling accords precisely with the assertions of Respondent's expert in Liechtenstein law.

7

- under §879(3), "the agreement of venue in itself, irrespective of the seat of the arbitration court, can already constitute gross prejudicial treatment for the contractual partner, for example if the distance of the venue bears material financial costs or complicates the costs of bringing an action in any other way." (Id. at ¶Ex. F)

One of these conclusions summarizes many of the points and bears repeating - "**the choice of New York as the hearing venue would... be void under Liechtenstein law if New York as a hearing venue was a gross disadvantage from Farrell's perspective.**" (Id. at ¶54) Thus the Court need only determine if litigating in New York is a gross disadvantage from Petitioner's perspective. Putting aside the fact that Petitioner – the best authority on his own perspective – has sworn that this is true from his perspective in the moving papers (Petition, ¶14), the case law offers further instruction on what is a gross disadvantage.[4] Dr. Walch cites authority[5] stating that gross prejudice can occur simply "**if the distance of the venue bears material financial costs or complicates the costs of bringing an action in any other way**" (Walch Decl. at ¶Ex. F) or if the forum "**cause[s] substantially higher procedural costs than arbitration in... Dublin**." (Id. at ¶68) The German courts in addition discussed the prejudice arising from the lack of contacts, noting that "[T]he franchise contract itself was performed in

---

[4] The term "grossly disadvantaged" here is of course a translation (*gröblich benachteiligt*), and the subtle nuances we might tease out of the English words "grossly" and "disadvantaged" from English-language contexts should not supersede the definitions in German-language authorities. That said, there is a federal decision referencing the term "gross disadvantage" in the forum context, and it is in accordance with these interpretations and provides further support for Petitioner's position. The case involved a dispute over the management of a golf course in France. The court in Mediterranean Golf, Inc. v. Hirsch, 783 F. Supp. 835, 846 (D.N.J. 1991) dismissed the suit filed in New Jersey, holding that the fact that witnesses would be unavailable to participate in the proceedings (along with added costs of translation if they were procured) was a factor that "weighs significantly in favor of dismissal because maintenance of this suit in this court is very likely to place [Defendant] at a gross disadvantage." The factor applies. Witnesses in this case, for example the proprietor of the franchise improperly positioned by Subway (Verified Petition, ¶5) and other franchisees who could verify the impropriety of the retaliatory inspection (Semel Aff., ¶¶12-13), are not under any party's control and thus would likely not be available in a New York arbitration, further persuading that the forum clause grossly disadvantages Petitioner and is thus void under Liechtenstein law.

[5] While Dr. Walch also offers opinions on the facts of this case, this is plainly not an area of his expertise, and he is unpersuasive in opining on the facts that are beyond his personal knowledge and involve Petitioner's operations and situation in Ireland.

8

Germany… The license… was granted… in Europe… Both sides performed all other contractual duties in Germany." (Semel Aff. at ¶29).

In this case, all of the above factors apply. The entirety of the contract was performed in Ireland. Moreover, all of the witnesses reside in Dublin, as well as the documents, property and business operations that compose the entirety of this dispute. This remoteness of evidence is a significant obstacle to Petitioner presenting his case in New York. Respondent has tried to downplay this in the Declaration of Tricia Lee, claiming that this is a simple arbitration of 2,000 Euros. (Lee Decl., ¶17) That is hardly the case, as the royalty dispute is only one aspect of a much larger dispute between the parties. As shown in other parts of Ms. Lee's Declaration and the moving papers, there is a deep dispute between the parties that involves proceedings in an Irish court, cross-allegations of defamation, allegations that trademarks were used in "a way that is injurious and prejudicial to the System" and much more (Semel Aff., ¶¶8-13, Ex. M; Lee Decl.,¶¶30-34). Moreover, the demand for arbitration before ADRC does not limit its claims to a simple collection action, and Subway has already served notice of a variety of further claims that will no doubt be included in the full arbitration between the parties. Id. Petitioner's defenses alone involve witnesses and evidence, all of which are in Ireland. Even if Respondent's true intent were to bring a narrow proceeding, it cannot isolate one portion of the dispute. Respondent admits that the dispute arises out of performance in Ireland. Opp. Br., pp.6-7. This is undeniable. To ask Petitioner to somehow transport the entire case to New York, along with all of the witnesses and evidence, so that Respondent can have arbitration in the backyard of its parent company, more than meets the threshold for "gross disadvantage" set out by Dr. Walch and the German decisions, thereby invoking the protections of §879(3) and rendering the forum clause void. Nor do the standards of *forum non conveniens* under U.S. law apply, as the parties agree that the substantive Liechtenstein law on contractual validity controls the Agreement.

Of course, holding the forum clause void does not eviscerate the arbitration agreement nor disadvantage Respondent. Upon stay of arbitration in New York, Respondent and Petitioner

9

can proceed with full arbitration under the Rules in a proper forum like Dublin, where both parties have offices, legal counsel and access to all witnesses and evidence. The result dictated by Liechtenstein law is the equitable result as well. Since Petitioner risks a waiver of objections if he participates in the ADRC arbitration, a stay by this Court is not only proper, but is the only way to prevent Respondent from benefitting from its breach and obtaining (yet another) improper default judgment against its foreign franchisees. Moreover, Respondent agrees that Section 10(i) of the Agreement awarding attorneys' fees and expenses applies in this situation. Opp. Br., p.19. Petitioner thus respectfully submits that the Court should enforce this provision in full, especially as Respondent ignored Petitioner's advance written notice that the ADRC arbitration was not authorized and thus left Petitioner with no option but to seek relief in court.

## **CONCLUSION**

For all of the foregoing reasons, and upon the moving papers and the accompanying Reply Declaration of Benjamin K. Semel, Petitioner respectfully requests that the Court grant:

(a) a permanent stay of the Respondent's arbitration involving ADRC;

(b) a permanent stay of Respondent's arbitration against Petitioner in the New York forum, based on the Liechtenstein law of the Agreement and the collateral estoppel of the German court decisions that were litigated by Respondent;

(c) attorneys' fees and expenses, including but not limited to the costs and disbursements of this proceeding, pursuant to Section 10(i) of the parties' Agreement; and

(d) such other and further relief as the Court may find just and proper.

Dated: New York, New York
February 4, 2011

                            PRYOR CASHMAN LLP

                            __/s/ *Benjamin K. Semel*_____
            By:    Benjamin K. Semel, Esq.
                     7 Times Square
                     New York, New York 10036
                     (212) 421-4100
                     bsemel@pryorcashman.com
                     *Attorneys for Petitioner*