```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
GLEN P. FARRELL,               :
                               :
          Petitioner,          :
                               :        No. 11 Civ. 08 (JFK)
     -against-                 :
                               :        Memorandum Opinion and Order
SUBWAY INTERNATIONAL, B.V.,    :
                               :
          Respondent.          :
------------------------------X
```
**JOHN F. KEENAN, United States District Judge:**

Before the Court is Glen P. Farrell's ("Farrell" or "Petitioner") petition to stay arbitration initiated by Subway International, B.V. ("Subway" or "Respondent"). Farrell also requests that the Court invalidate the forum selection provision in the parties' arbitration agreement. For the following reasons, Farrell's petition for a stay of arbitration is granted, but a properly initiated arbitration should proceed in New York City as the parties agreed.

### I.  BACKGROUND

Farrell is a citizen of the Republic of Ireland and operates three SUBWAY franchises in Dublin, Ireland. (Verified Pet. ¶ 1.) SUBWAY is a registered trademark of Doctor's Associates Inc. ("DAI"), which owns the proprietary system for franchising restaurants under the SUBWAY trade name and service mark. (Semel Aff. Ex. B, Franchise Agreement at 1.) Subway International is a Netherlands corporation with a sublicense to

1

franchise and operate SUBWAY restaurants in the Republic of Ireland. (Verified Pet. ¶ 2.)

On August 20, 2008, the parties entered into Franchise Agreement #45720 (the "Agreement") allowing Farrell to operate a SUBWAY sandwich shop in Dublin, Ireland. (Semel Aff. Ex. B, Franchise Agreement.) The Agreement provides for arbitration of any dispute between the parties. (Id. ¶ 10.) Beginning in 2009, Farrell complained to Subway and Irish authorities concerning alleged conduct by Subway not relevant to the petition at hand. (Verified Pet. ¶¶ 5-7.) On September 9, 2010, Subway filed a demand for arbitration (the "Demand") with the American Dispute Resolution Center, Inc. ("ADRC") (Id. ¶ 9.) The Demand requested that the arbitration take place in New York City. (Id.) Soon afterward, pursuant to N.Y. C.P.L.R. § 7503(b), Farrell filed the instant petition in New York Supreme Court seeking a stay of arbitration. Subway removed the action to federal court pursuant to 9 U.S.C. § 205 and 28 U.S.C. § 1441. Farrell has refused to participate in the arbitration begun by Subway, and there is no pending motion by Subway to compel arbitration.

## II. DISCUSSION

Petitioner does not object to arbitration. (Id. ¶ 8.) Rather, he contests the procedure by which Respondent initiated arbitration as contrary to the directions provided in the

2

Agreement.  Petitioner challenges the Demand on two independent grounds.  First, Petitioner argues that the filing of the Demand with ADRC violated the Agreement, which does not allow one party to unilaterally choose the arbitrator or appointing authority.  Second, Petitioner asserts that the arbitral forum selection clause in the Agreement designating New York as the site for arbitration hearings is void.

### A.  Subject Matter Jurisdiction

While neither party has disputed that the Court has subject matter jurisdiction over this matter, the Court must nevertheless determine whether jurisdiction exists.  The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, enforces arbitration agreements involving at least one foreign party.  The Convention requires that:

> Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

21 U.S.T. 2517, Art. II(1).  The United States enabled the Convention in Chapter 2 of the Federal Arbitration Act ("FAA").  Pursuant to § 203 of the FAA, federal courts have original jurisdiction of any "action or proceeding falling under the Convention."  9 U.S.C. § 203.  An arbitration agreement falls

3

under the Convention if it "aris[es] out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title." 9 U.S.C. § 202. Additionally, an agreement falling under the Convention must have a reasonable relation with one or more foreign states. Id.; see Jones v. Sea Tow Servs. Freeport N.Y. Inc., 30 F.3d 360, 365-66 (2d Cir. 1994). Actions relating to an arbitration agreement that falls under the Convention may be removed to federal court. 9 U.S.C. § 205.

There is no dispute that the arbitration agreement arises out of a contractual franchise relationship between an Irish citizen and a Dutch corporation, with performance of the contract occurring in Ireland. Because the Agreement falls under the Convention, the Court has subject matter jurisdiction, and this action was properly removed to federal court under § 205 of the FAA.

Although the parties do not address the issue, there is some disagreement within this District as to whether the Court has the power to stay arbitration under the FAA. Compare Ghassabian v. Hematian, No. 08 Civ. 4400, 2008 WL 3982885, at *2 (S.D.N.Y. Aug. 27, 2008) (no federal authority to stay an arbitration), with Oppenheimer & Co. Inc. v. Deutsche Bank AG, No. 09 Civ. 8154, 2009 WL 4884158, at *3 (S.D.N.Y. Dec. 16,

2009) (characterizing Ghassabian as an "outlier" and assuming that district court may stay arbitration). However, this case arises under the Convention, which, as implemented by the FAA, provides that: "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206. The Court agrees that "Section 206 unequivocally directs the court to order arbitration where appropriate. It would follow . . . that the court should have a concomitant power to enjoin arbitration where arbitration is inappropriate. A failure to do so would frustrate the goals of arbitration, since there would be delay and increased expense as the parties litigated in both fora." Satcom Int'l Group PLC v. Orbcomm Int'l Partners, L.P., 49 F. Supp. 2d 331, 342 (S.D.N.Y. 1999). Therefore, the Court finds that it has the power to stay arbitration under the circumstances presented herein.

### B.   Choice of Law

The Court must next determine the law to be applied. While the parties agree that the Agreement falls under the Convention, Petitioner submits that the Court should apply the substantive law of Liechtenstein, as designated in the Agreement's choice of

law provision, to determine the enforceability of the arbitrator selection and forum selection clause.[1]

Chapter 1 of the FAA is incorporated into Chapter 2 and may apply to actions brought under the Convention to the extent they do not conflict. See 9 U.S.C. § 208. The Court of Appeals has held that when courts "exercise jurisdiction under Chapter Two of the FAA [the Convention], we have compelling reasons to apply federal law, which is already well-developed to the question of whether an agreement to arbitrate is enforceable." Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 96 (2d Cir. 1999); cf. Sarhank Group v. Oracle Corp., 404 F.3d 657, 661-62 (2d Cir. 2005); Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 845-46 (2d Cir. 1987) (applying federal common law to determine whether party validly agreed to arbitration in an agreement governed by Convention); Storm LLC v. Telenor Mobile Communications, No. 06 Civ. 13157, 2006 WL 3735657, at *8 n.4 (S.D.N.Y. Dec. 15, 2006) ("Both parties have acknowledged, however, that this case falls under the New York Convention. The weight of the authority suggests that in such cases, federal law governs the issue of whether the

---

[1] Respondent initially agreed that the substantive law of Liechtenstein applied, but argued that the arbitral forum selection clause would be upheld under the law of Liechtenstein. The Court later requested supplemental briefing on the choice of law question, at which time Respondent took the position that Court should apply federal common law and not Liechtenstein law to decide the validity of the arbitral forum selection clause.

6

parties have agreed to arbitrate."); Republic of Ecuador v. ChevronTexaco Corp., 376 F. Supp. 2d 334, 354-55 (S.D.N.Y. 2005); Borsack v. Chalk & Vermilion Fine Arts, Ltd., 974 F. Supp. 293, 299 n.5 (S.D.N.Y. 1997) ("[W]here jurisdiction is alleged under chapter 2 of the Federal Arbitration Act the issue of enforceability and validity of the arbitration clause is governed by federal law.").  Furthermore, the Court of Appeals has "long held that once a dispute is covered by the FAA, federal law applies to all questions of interpretation, construction, validity, revocability, and enforceability."  In re Salomon Inc. Shareholders' Derivative Litig., 68 F.3d 554, 559 (2d Cir. 1995) (internal quotation and alterations omitted).

On the other hand, some courts have deferred to the substantive law designated in a choice of law provision to determine the validity of an arbitration agreement.  See, e.g., Motorola Credit Corp. v. Uzan, 388 F.3d 39, 50-51 (2d Cir. 2004); FR 8 Singapore Pte. Ltd. v. Albacore Maritime Inc., No. 10 Civ. 1862, 2010 WL 5076594, at *6-9 (S.D.N.Y. Dec. 13, 2010) (following arbitration agreement's choice of law although "[w]here the choice of law in a Convention case is between the law specified by the choice-of-law clause and federal common law, Second Circuit precedent has been less than crystal clear").

The difficulty is that Petitioner would have the Court use the choice of law provision to invalidate the Agreement's choice of forum provision. In cases where courts have applied an agreement's choice of law, such action would "ensure uniform interpretation and enforcement of that agreement and . . . avoid forum shopping." Motorola, 388 F.3d at 51. In this case, deferring to the Agreement's choice of law could result in the Court disregarding the agreed-upon forum selection clause, a result that encourages forum shopping and destroys any predictability of forum for the parties. Therefore, the Court determines that federal law governs the Court's interpretation of the Agreement. Application of federal law upholds "the ordinary and customary expectations of experienced business persons" to be bound by the choices and bargains agreed to in international agreements. See Sarhank, 404 F.3d at 662.

### C. Subway's Unilateral Selection of ADRC Violates the Agreement

As an initial matter, the parties disagree as to whether a dispute over selecting the arbitrator is a subject for the Court or for the arbitrator to decide. Petitioner asks the Court to stay arbitration because Subway's selection of ADRC as the appointing authority was contrary to the Agreement. Subway asserts that whether the ADRC was properly designated is a matter for the arbitrator to decide.

"When parties have agreed to arbitrate, but disagree as to the operation or implementation of that agreement, under the Federal Arbitration Act it is properly a matter for the Court." Stop & Shop Supermarket Co., LLC v. United Food & Commercial Workers' Union Local 342, AFL-CIO, CLC, No. 06 Civ. 3201, 2006 WL 1148728, at *2 (S.D.N.Y. May 1, 2006), aff'd, 246 F. App'x 7 (2d Cir. 2007).  A dispute over a party's choice of arbitrator is properly submitted to the Court.  It would be counter-intuitive to allow the arbitrator in question to determine the propriety of his selection.  See id. ("Here, a method of the arbitration (the selection of appropriate arbitrators) is called into question and the Court undertakes its duty under § 5 to correct the failure of a party to avail itself of the proper method.  It would be contrary to § 5 to submit to the arbitrator in question the appropriateness of his selection."); cf. Avis Rent a Car Sys., Inc. v. Garage Emp. Union, Local 272, 791 F.2d 22, 25 (2d Cir. 1986) (court has the power to invalidate an arbitration award "if the arbitrator is not chosen in accordance with the method agreed to by the parties"); Serv. Emp. Int'l Union, Local 32BJ v. Coby Grand Concourse, LLC, No. 04 Civ. 9580, 2006 WL 692000, at *5 (S.D.N.Y. Mar. 16, 2006) ("Since the unilaterally selected arbitrator in this case was chosen in complete contravention of the arbitration provision of the CBA,

the arbitrator's award was without effect, and is therefore vacated.").

As to ADRC, Petitioner submits that Subway failed to follow the procedures set out in the Agreement for selecting the arbitrator. The Court agrees. The arbitration provision of the Agreement is unambiguous. Paragraph 10(c) provides in part:

> The parties will arbitrate any Dispute the parties do not settle under the discussion procedures above, and any Dispute which this Agreement provides will be submitted directly to arbitration, except as provided in this Agreement. The arbitration will be held in accordance with the United Nations Commission on International Trade Regulations and Law (UNCITRAL) Arbitration Rules administered by an arbitration agency, such as the International Centre for Dispute Resolution, an affiliate of the American Arbitration Association.

(Semel Aff. Ex. B Franchise Agreement ¶ 10(c).) The Agreement does not specify an arbitrator but provides for a method of selection and suggests one possible choice. Under the FAA, "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator . . . such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method . . . then upon the application of either party to the controversy the court shall designate and appoint an arbitrator." 9 U.S.C. § 5. Thus, federal law directs that the Court enforce the selection of the arbitrator in accordance with


the terms of the Agreement, and here, the Agreement states that UNCITRAL Rules govern.

Article 6 of the UNCITRAL Arbitration Rules covers "Appointment of Arbitrators."[2]  Under Article 6, the parties must agree on the arbitrator and/or the appointing authority.  If the parties cannot agree, then either party may request the Secretary-General of the Permanent Court of Arbitration at The Hague to select an appointing authority.  (Semel Aff. Ex. C, UNCITRAL Rules at 271.)  The parties do not dispute UNCITRAL's application.  Instead, Respondent asserts that Section 10(c) allows for the unilateral selection of any "agency 'such as' the

---

[2]  Article 6 provides:

1. If a sole arbitrator is to be appointed, either party may propose to the other:

   (a)  The names of one or more persons, one of whom would serve as the sole arbitrator; and
   (b)  If no appointing authority has been agreed upon by the parties, [either party may propose to the other] the name or names of one or more institutions or persons, one of whom would serve as appointing authority.

2. If within thirty days after receipt by a party of a proposal made in accordance with paragraph 1 the parties have not reached agreement on the choice of a sole arbitrator, the sole arbitrator shall be appointed by the appointing authority agreed upon by the parties.  If no appointing authority has been agreed upon by the parties, or if the appointing authority agreed upon refuses to act or fails to appoint the arbitrator within sixty days of the receipt of a party's request therefor, either party may request the Secretary-General of the Permanent Court of Arbitration at The Hague to designate an appointing authority.

ICDR, capable of and willing to use the UNCITRAL rules." (Mem. of Law in Opp'n to Petition to Stay Arbitration at 13.)

Respondent's reading of the arbitration provision has no limitation — any arbitration agency may be appointed unilaterally. Respondent ignores the beginning clause of the sentence that states that "[t]he arbitration will be held in accordance with the United Nations Commission on International Trade Regulations and Law (UNCITRAL) Arbitration Rules." These rules include a process for the selection of arbitrators. Nothing in the Agreement suggests that all aspects of the arbitration <u>except</u> for the selection of the appointing authority or arbitrator would be governed by the UNCITRAL Arbitration Rules. Petitioner did not agree to the selection of ADRC; under UNCITRAL Rules, the parties could either agree on an alternate arbitration agency or apply to The Hague for assistance. Because ADRC was not selected in accordance with the Agreement the arbitration is stayed, pursuant to the FAA and the Convention, so that the parties may pursue arbitration before a properly selected arbitrator.[3]

---

[3] Because arbitration is stayed based upon the improper designation of ADRC as the arbitration agency, the Court need not reach Petitioner's claims concerning the Demand issued by ADRC.

12

**D.  The Arbitral Forum Selection Clause Is Enforceable**

Petitioner also asserts that the Agreement's arbitral forum selection clause is void.  Paragraph 10(d) of the Agreement provides:  "[t]he parties agree that New York, New York, USA shall be the site for all arbitration hearings held under this Paragraph 10."  (Semel Aff. Ex. B Franchise Agreement ¶ 10(d).)  Petitioner argues that this provision is unenforceable because it is prohibited under Liechtenstein law.  As discussed above, the Court will apply federal common law, and in doing so upholds the arbitral forum selection clause.[4]

Chapter 2 of the FAA, which implements the Convention and governs the Agreement, "grants a district court the authority to direct that arbitration be held in accordance with the parties' agreement at a location 'within or without the United States.'" Hughes, Hooker & Co. v. Am. S.S. Owners Mut. Prot. & Indem. Assoc., Inc., No. 04 Civ. 1859, 2005 WL 1384055, at *5 (S.D.N.Y. June 9, 2005) (citing 9 U.S.C. § 206).  There exists a strong presumption in favor of upholding the parties' choice of forum.

---

[4] As a preliminary matter, the Court must decide whether a dispute over enforcement of the arbitral forum selection clause is for the court or arbitrator to decide.  Similar to the Court's review of ADRC's authority, a challenge to a forum selection provision is an issue for the court, not the arbitrator, to review.  See Carrington Capital Mgmt., LLC v. Spring Inv. Serv., Inc., 347 F. App'x 628, 631 (2d Cir. 2009) (summary order) ("We rejected the petitioner's argument that the 'situs of suit' should be determined by the arbitrators rather than by the district court.").

13

See DaPuzzo v. Globalvest Mgmt. Co., L.P., 263 F. Supp. 2d 714, 740 (S.D.N.Y. 2003) (holding that leaving the parties "free to pursue their contractual arbitration commitment by its terms" would not "conflict with the letter and purposes of the Convention"); Gill v. World Inspection Network Int'l, Inc., No. 06 Civ. 3187, 2006 WL 2166821, at *3 (E.D.N.Y. July 31, 2006) ("As a general matter, courts consistently enforce arbitral forum selection clauses under the FAA's presumptive requirement that arbitration clauses are fully enforceable.").

Therefore, the Court should enforce the forum selection clause unless Petitioner can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."  M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972); accord Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V., 145 F.3d 505, 510 (2d Cir. 1998) ("[A] mandatory forum-selection clause . . . requires the court to determine whether the party resisting enforcement of the clause has shown the clause to be unreasonable or unfair under the circumstances."); JSC Surgutneftegaz v. President & Fellows of Harvard Coll., No. 04 Civ. 6069, 2005 WL 1863676, at *5 (S.D.N.Y. Aug. 3, 2005) (same).  Petitioner has failed to do so here.

There is no allegation that the forum selection provision is the result of fraud or overreaching.  Petitioner is not an

14

unsophisticated business person, and both parties agree that they mutually agreed to mandatory arbitration as the initial dispute resolution procedure.  Petitioner argues that the "remoteness of evidence" to New York is a "significant obstacle" to his presenting his case in New York.  He adds that the dispute involves events and parties in Ireland, so he would need to transport the entire case to New York for arbitration.  Yet, Petitioner bargained for and agreed to New York City as the site for arbitration of any dispute between himself and Subway; knowing that he would operate sandwich shops in Ireland, the inconvenience of a New York forum should have been readily apparent to him at the time he entered into the Agreement.  This action itself belies Petitioner's contention that he cannot effectively arbitrate in New York.  While not determinative, it is difficult to understand how Petitioner would be incapable of participating in arbitration in New York, where he is clearly capable of hiring American counsel and transporting the necessary evidence overseas in order to litigate the instant dispute.  Furthermore, the Agreement provides that if a court should determine that the arbitration clause is unenforceable, the parties will litigate the dispute in the United States District Court for the District of Connecticut.  (Semel Aff. Ex. B Franchise Agreement ¶ 10(k).)  Petitioner agreed to arbitral and judicial forums located in the United States.  He cannot now

15

turn around and argue that he is disadvantaged because his restaurant franchise is located in Ireland. Parties may very well be willing to arbitrate in an inconvenient forum when they enter into an Agreement, and the Court should honor their right to make those practical choices. See Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co., 529 U.S. 193, 201 (2000). The Court will thus hold the parties to their agreement.

Assuming arguendo that Liechtenstein law applied to the forum analysis, the Court would reach the same result. Both parties assert that, under Liechtenstein law, a forum selection clause will be invalidated where a party is "grossly disadvantaged" by the choice of forum. (Decl. of Dr. Ernst Walch ¶¶ 38-40.) Petitioner proffers two German court decisions that held the arbitral forum selection clause in Subway's franchise agreements were void under Liechtenstein law. However, Petitioner was not a party to those cases, and the operative question under Liechtenstein law is whether the franchisee himself is disadvantaged by the forum.[5] As discussed

---

[5] The Court has no information about the particular circumstances of the franchisees in the German disputes and can draw no comparison to Petitioner. Therefore, the Court's enforcement of the forum provision against Petitioner here would not undermine or contradict the decisions of the German courts. Nor does the principle of international comity compel this Court to follow the German courts. See JSC Surgutneftegaz, 2005 WL 1863676, at *4 (where different parties had litigated identical claim in Russia and lost, there was "little chance" that enforcing the

above, Petitioner has failed to show the forum to be unreasonable or unfair. It logically follows that Petitioner has failed to show that he is "grossly disadvantaged" by the forum he agreed to under the Agreement. There is no reason that the forum selection and choice of law clauses cannot both be enforced. The arbitration will take place in New York, and the arbitrator shall apply Liechtenstein law to the Agreement. Regardless of the governing law, the parties will be held to their agreement to arbitrate disputes in New York City.

### E.  Attorneys' Fees

Both parties apply to the Court for an award of attorneys' fees, as provided for under the Agreement. Paragraph 10(i) of the Agreement provides for an award of attorneys' fees where a party:  (1) commences an action not permitted under the Agreement in any court before arbitration is complete; or (2) commences arbitration or litigation in a forum not permitted under the Agreement. (Semel Aff. Ex. B Franchise Agreement ¶ 10(i).) Because neither party has entirely abided by the Agreement, the Court declines to award attorneys' fees.

---

arbitration agreement would undermine the foreign court's decision).

## III. CONCLUSION

This Opinion should not be construed in any way as foreclosing arbitration. Both parties agree that arbitration is appropriate and required under the Agreement. The Court's decision affirms the Agreement in its entirety. Petitioner's motion to stay arbitration is granted, but the request to invalidate the forum selection clause is denied. The pre-trial conference scheduled for March 24, 2011 is cancelled. The Clerk of Court is hereby directed to close this case.

**SO ORDERED.**

Dated:   New York, New York
         March 23, 2011

                                        _____
                                            John F. Keenan
                                        United States District Judge